WALTER UPSTONE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 20, 1883.*

1. CRIMINAL LAW—*drunkenness, or insanity produced by intoxication, as a defence.* Temporary insanity produced immediately by intoxication, furnishes no excuse for the commission of a homicide or other crime, but a fixed insanity does. Whether a party committing a crime is under the influence of a fixed insanity, or a temporary one induced immediately by intoxication, is a question of fact for the jury, and their verdict will not be disturbed unless it is clearly against the evidence.

2. While it is true there must be a joint union of act and intention, or criminal negligence, to constitute a criminal offence, yet when without intoxication the law will impute to the act a criminal intent,—as, in the case of a wanton killing of another without provocation, voluntary drunkenness is not

available to disprove such intent, so as to reduce the crime from murder to manslaughter.

3. Voluntary intoxication furnishes no excuse for crime committed under its influence, even if the intoxication is so extreme as to make the author of the crime unconscious of what he is doing, or to create a temporary insanity.

4. SAME—*evidence of defendant's previous habits of intoxication.* On the trial of a defendant for murder, when insanity is set up in defence, and he is shown to have been intoxicated at the time of the homicide, evidence of his previous intoxication will be properly received from the prosecution, as bearing upon the question of intoxication at the time of the killing, and of the conduct of the defendant while in that state.

5. SAME—*restraining violence of a prisoner pending motion for a new trial.* After the trial and conviction of a prisoner, upon a charge of murder, upon the hearing of a motion for a new trial, which had been continued to a subsequent term, the prisoner broke out into manifestations of rage and violence towards the officers, and attempted to break away. Thereupon handcuffs were placed upon his wrists to restrain him. It was *held*, there was no error in thus preserving order and protecting the sheriff and his bailiffs from violence, and that it could not affect the justness of the verdict at the preceding term, nor the sentence following the overruling of the motion for a new trial.

6. INSTRUCTIONS—*stating abstract proposition of law.* The giving of an instruction stating an abstract principle of law not applicable in a criminal case, is not error unless the principle stated is erroneous.

7. SAME—*construed, as excluding defence of insanity.* On the trial of one for murder, insanity being relied on as an' excuse, the court instructed the jury that if the killing had been shown by the evidence, beyond a reasonable doubt, to have been the act of the defendant, the law presumes it murder, provided they further believe, from the evidence, that no circumstances existed excusing or justifying the act, or mitigating it so as to make it manslaughter: *Held*, that the instruction was not liable to the objection of excluding the defence or excuse of insanity, but on the contrary, it recognized the fact there might be an excuse for the act.

8. And in the same case, an instruction contained a proviso that if the jury further believed, from the evidence, beyond a reasonable doubt, that the blows were struck with malice aforethought, either express or implied, to find the defendant guilty: *Held*, that the instruction did not exclude the defence of insanity, which, if it existed, would show an absence of malice aforethought.

9. EVIDENCE—*in rebuttal—time of admission.* The time of receiving evidence is so much a matter of discretion with the court trying a case, that it will not be a ground for reversing a judgment that evidence is allowed in rebuttal which in strictness is not properly so receivable.

10. SAME—*opinions of persons not experts, as to sanity.* On the trial of one for crime, the opinions of neighbors and acquaintances of the defendant, who are not experts, may be given as to his sanity or insanity, founded on their actual observations.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. A. J. HOPKINS, Mr. N. J. ALDRICH, and Mr. JOHN L. PRATT, for the plaintiff in error:

The felonious intent is essential to a conviction. *Commonwealth* v. *McKie*, 1 Gray, 62; Wharton on Homicide, secs. 670, 687; Rev. Stat. chap. 38, sec. 140; Ray's Medical Jurisprudence of Insanity, sec. 514; *Ogletree* v. *State*, 28 Ala. 693; *Mooney* v. *State*, 33 id. 420.

While drunkenness does not excuse or palliate any offence, it may produce such a state of mind as to render the party incapable of forming or having any criminal intent. *Mooney* v. *State*, 33 Ala. 420; Wharton on Crim. Law, (4th ed.) secs. 32, 41, 43; *Pigman* v. *State*, 14 Ohio, 555; *State* v. *Garvey*, 11 Minn. 154.

The *quo animus*, or state of mind under which the offence was committed, is always a legitimate subject of inquiry. Bishop on Crim. Law, sec. 227; 2 id. sec. 616; *Pond* v. *People*, 8 Mich. 150; Burrill on Crim. Evidence, 282; *Maher* v. *People*, 11 Mich. 215.

A reasonable doubt of the sanity of the accused must acquit. *Hopps* v. *People*, 31 Ill. 392.

Non-professional witnesses will not be permitted to give mere opinions, disconnected from the facts on which they are based. 1 Wharton & Stille, sec. 272; *Real* v. *People*, 42 N. Y. 270; Wharton on Crim. Law, (8th ed.) sec. 417.

As to the effect of intoxication in disabling the mind from a purpose, and having an influence on free volition, see *Galliher* v. *Commonwealth*, 2 Duv. 164; *Swan* v. *State*, 4 Humph. 136; *Smith* v. *Commonwealth*, 1 Duv. 225; *State* v. *Schingen*,

20 Wis. 74; *Mooney* v. *State*, 33 Ala. 420; *Haile* v. *State*, 11 Humph. 154.

Mr. JAMES McCARTNEY, Attorney General, Mr. CHARLES A. WORKS, State's Attorney, Mr. CHARLES E. FULLER, and Messrs. CARNES & DENTON, for the People:

Where, without intoxication, the law would impute to the act a criminal intent, as in the case of wanton killing, without provocation, drunkenness is not available to disprove such intent. *Rafferty* v. *People*, 66 Ill. 124.

Wrongful intent to drink coalesces with the wrongful act while drunk. 1 Bishop on Crim. Law, secs. 397, 400, 401; 1 Wharton on Crim. Law, secs. 49–55; *United States* v. *McGhee*, 1 Curtis, 1; *Flannigan* v. *People*, 86 N. Y. 554.

The testimony of persons not experts, as to insanity, is proper. *Rutherford* v. *Morris et al.* 77 Ill. 397.

The instructions complained of were correct. The People were not bound in their instructions to anticipate and exclude defences. *Mitchell* v. *Milholland*, 106 Ill. 175; *Logg* v. *People*, 92 id. 598.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

The grand jury of De Kalb county found an indictment against Walter Upstone for the murder of one Peter Melson. A change of venue was taken by the defendant to Winnebago county, and a trial had in the circuit court of that county, at its January term, 1883, resulting in a verdict of guilty, and fixing the punishment at imprisonment in the penitentiary for seventeen years. A motion for a new trial was made and overruled, and sentence was passed upon the defendant in accordance with the verdict. It is insisted that the evidence was insufficient to sustain the verdict.

The homicide occurred under these circumstances: It took place on Sunday, February 5, 1882, in the blacksmith shop

of the defendant, situated on the main street and at the most
public place in the village of Fielding, in DeKalb county.
About two o'clock in the afternoon of that day one of the
witnesses, George Clark, passing along the street on horse-
back, saw the defendant standing in his blacksmith shop
door swinging a hammer and singing, and as the witness
approached near, the defendant said to him: "George, look
here." The defendant then went inside the shop, and wit-
ness saw him strike somebody on the floor twice with a scoop
shovel, and afterwards twice with a sledge-hammer. He then
told witness to go and tell some one there was a dead man
there. The witness went and gave information of what he
had seen, and on his return a crowd had collected, and Peter
Melson was found lying on the floor badly bruised, and his
skull fractured. The killing was undisputed. The theory of
the defence was, that the defendant was insane; that of the
prosecution, that he was intoxicated.

It was in evidence, that the defendant and the deceased
were intimate friends; that on the day before (Saturday)
they went to Monroe, five miles distant, to a pigeon-shoot;
that about one o'clock on the Sunday of the homicide, a
witness saw the defendant in his yard, and he called to the
witness to come over, who did so, and went into defendant's
house; defendant mixed up a drink for them both to take,
which was alcohol, as witness thought; witness remarked
that his was too warm; defendant replied, perhaps it was
not strong enough for him, and put in some more liquor,
and then it was too strong; witness could not drink it at all;
defendant drank his. Defendant said, "Dutch Pete is in the
shop taking a little nap," and he would take witness' glass
out and let him drink it; he took it out, and witness went
with him to the shop; Melson was there asleep, as the wit-
ness judged, his head and shoulders leaning against the shop,
and partially sitting on the vice-bench; defendant set the
glass on the bench and went up and talked to Melson, pulled

·him a little, and Melson partially fell, and settled down on the floor among a lot of rubbish, "so drunk he couldn't stand." Witness did not hear him say a word; saw no bruises on him then; witness helped him up and put him on the clean floor, and defendant doubled up his cloth apron and put it under Melson's head; witness then left them; the glass was left sitting there. About three-quarters of an hour after, the alarm was given that defendant had murdered somebody. Defendant had been seen on that day standing in the doorway of his shop drinking something out of a tumbler, and then stepping back in the shop. An empty quart bottle was found in the stove, which had contained what the witness thought was alcohol. On Thursday or Friday before, defendant, together with two others, had purchased a gallon of alcohol, one paying for a half gallon, and defendant and the other for one-half, which they divided between them.

There was in evidence a conversation had with defendant some two or more years before, when he said that if he let liquor alone he was all right, and that when he drank liquor it made him "crazy wild." The concurrent testimony of the many witnesses present on the occasion of the homicide was, that the defendant was intoxicated. The manifestations of conduct on the part of the defendant at the time were of a very strange, wild and irrational character. Very much evidence was given as to insanity in members of the family; that his mother, a sister and three brothers were insane, the mother, sister and one brother dying in insane hospitals; that an aunt of the mother was insane, and two of her sisters died in insane hospitals. Much testimony of neighbors and acquaintances was given,—on one side, that defendant was insane, on the other side, that he was sane. The superintendent of the insane asylum at Elgin, a medical man, gave it as his opinion, as an expert, that from the testimony, taking it to be true, defendant was insane. This was before the rebutting testimony of the prosecution.

The question in the case was, whether there was but a temporary insanity, produced immediately by intoxication, or fixed insanity. If it was the former, it furnishes no excuse. Questions of this kind are peculiarly questions for a jury to determine, and upon settled principle this court should not interfere to disturb the verdict, unless it is clearly contrary to the evidence. We can not say that is so in this case.

Various rulings of the court were excepted to, as, that evidence was received in rebuttal improperly; that opinions as to defendant's sanity were admitted, and evidence of defendant's previous habits of intoxication. The time of receiving evidence is much in a court's discretion, and it would not be ground for reversing a judgment that evidence was permitted to be introduced in rebuttal which in strictness was not properly so receivable. Evidence was given, on both sides, of opinions of defendant's neighbors and acquaintances as to his sanity, founded upon their own knowledge. Exception is taken to such testimony admitted on the part of the People. We are of opinion that witnesses who are not experts may give their opinions, founded upon observation, on the question of sanity. Wharton on Crim. Evidence, sec. 417; 2 Ired. 78, *Clary* v. *Clary;* Wharton & Stille's Med. Jur. sec. 272; dissenting opinion of DOE, J., in *State* v. *Pike,* 49 N. H. 408, where the authorities are extensively collated; *Hardy* v. *Merrill,* 56 N. H. 227; *Roe* v. *Taylor,* 45 Ill. 485; *Rutherford* v. *Morris,* 77 Ill. 397; *Carpenter* v. *Calvert,* 83 id. 63. Evidence of previous intoxication on the part of defendant was properly enough admitted, as bearing upon the question of intoxication at the time of the homicide, and of the conduct of defendant when in that state.

The second instruction given to the jury, for the People, was:

"That if the killing of the person mentioned in the indictment has been satisfactorily shown by the evidence, beyond

all reasonable doubt, to have been the act of the defendant, then the law presumes it to have been murder, provided the jury further believe, from the evidence, beyond a reasonable doubt, that no circumstances existed excusing or justifying the act, or mitigating it so as to make it manslaughter."

It is objected to this, that it tells the jury they must convict the defendant of murder or manslaughter. We do not so read the instruction. It left the jury free to acquit, if there were circumstances which excused or justified the act. It is further said the instruction ignores the question of the insanity of the defendant. We do not think so. The instruction recognizes there might be an excuse for the act, and instructions for the defendant abundantly informed the jury that insanity would be a defence, which the jury would take to be an excuse. It does not matter what may be the technical meaning of excusable, but how the jury would understand it, and whatever was a defence they would understand as matter of excuse.

It is objected to the third instruction, that it states an abstract principle of law not applicable to the case. This would not be error unless the principle stated were erroneous.

It is objected to the fourth instruction, that it substantially instructed the jury to find the defendant guilty, regardless of the question of his mental condition at the time of the homicide. The question of mental condition was covered by the proviso to the instruction, "provided you further believe, from the evidence, beyond a reasonable doubt, that the blows were struck with malice aforethought, either expressed or implied." If there was the insanity which was claimed, then there would be the absence of malice aforethought.

The following further instructions were given on behalf of the People:

"7. Although it is the law in this State that a criminal offence consists in a violation of a public law, in the commis-

sion of which there must be a union or joint operation of act and intention, or criminal negligence, yet where, without intoxication, the law will impute to the act a criminal intent, as in the case of wanton killing without provocation, voluntary drunkenness is not available to disprove such intent.

"8.   That if you believe, from the evidence, beyond a reasonable doubt, that the defendant, when voluntarily intoxicated, committed the homicide charged in the indictment, under such circumstances as would have constituted such an act, by one not intoxicated, murder, then you are instructed that such intoxication would not reduce the crime of the defendant from murder to manslaughter, nor would such intoxication be any excuse or defence to the act.

"9.   The court further instructs you, that if you believe, from the evidence, beyond a reasonable doubt, each of the following propositions, to-wit: that at about two hours before the commission of the alleged homicide defendant was sane, and had the power to abstain from drinking alcohol; that defendant then knew that the drinking of alcohol by him would have the effect to render him insane or crazy; that defendant, so knowing the effect of alcohol upon him, and being sane, and having the power to abstain from taking alcohol, did then and there voluntarily drink alcohol; that the alcohol so drank by the defendant then and there made him insane or crazy; that while insane or crazy from the effects of such alcohol defendant committed the act charged in the indictment, at the time and place, and in the manner and form, therein charged,—then you should find defendant guilty."

The same criticism is made with respect to these first two as before,—that they ignore the prisoner's defence.   There clearly is no foundation for saying this as to the eighth, and as to the seventh, that was only laying down the abstract principle of law as to voluntary drunkenness being an excuse

12—109 ILL.

for crime; and in doing that, merely, it was not necessary to incumber the instruction with any exception of the defence that was made for the prisoner. *Mitchell* v. *Milholland*, 106 Ill. 175; *Logg* v. *The People*, 92 id. 598.

The legal principle asserted in these instructions is disputed. The principle is sustained by the decisions of this court, and is the well settled doctrine of the common law. (*Rafferty* v. *The People*, 66 Ill. 124; *McIntyre* v. *The People*, 38 id. 514; *The People* v. *Rogers*, 18 N. Y. 9; *United States* v. *McGhee*, 1 Curtis, 1; *Flanigan* v. *The People*, 86 N. Y. 554.) In Bishop on Crim. Law, sec. 400, the author lays it down: "When a man voluntarily becomes drunk, there is the wrongful intent, and if, while too far gone to have any further intent, he does a wrongful act, the intent to drink coalesces with the act while drunk, and for this combination of act and intention he is liable criminally. It is, therefore, a legal doctrine, applicable in ordinary cases, that voluntary intoxication furnishes no excuse for crime committed under its influence. It is so, even when the intoxication is so extreme as to make a person unconscious of what he is doing, or to create a temporary insanity." Our statute declares that "drunkenness shall not be an excuse for any crime or misdemeanor."

We do not think the last above instruction is objectionable in the respect, as claimed, of its partial recital of the evidence, nor in the respect that there is no basis in the evidence for the propositions stated. There was evidence of the defendant's acts and conduct about an hour before the homicide, affording ground of inference as to his mental state about two hours before. As to his power to abstain from drinking alcohol, there was evidence of his having once abstained for the period of about a year, after signing a pledge not to drink; and as to whether the alcohol drank by the defendant made him insane or crazy, his conduct at the time, and what he had done shortly before, were in evidence for

the jury to judge from, as well as his own prior statement "that when he drank liquor it made him crazy wild."

We perceive no error in refusing or modifying instructions asked by the defendant. The jury were instructed, on the part of the defendant, most fully and most favorably for him upon the subject of insanity as a defence, in all aspects bearing upon the case.

At the next term after the verdict the defendant was brought into open court, when the motion for a new trial, made at the previous term, was disposed of, and as the court was about to pass sentence, the prisoner broke out into manifestations of violence, and had a struggle with the officers to break away from them, and was attempting to commit acts of violence upon them, whereupon they placed a pair of handcuffs on his wrists, and he ceased his struggles. At this treatment defendant's counsel made objection, but the court overruled the objection, and suffered what had been done, deeming it necessary, to protect the sheriff and his bailiffs from the violence of defendant, and for the preservation of order. in court. This is alleged as error. What was done could have had no influence in the finding of the verdict the term before, nor upon the sentence, it following as a consequence upon the verdict and the overruling of the motion for a new trial. It did not affect the justness of the verdict or the sentence, and we fail to see why it should be any ground for the reversal of the judgment.

Finding no material error in the record, the judgment must be affirmed.

*Judgment affirmed.*