(No. 26556.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DANIEL MORIARITY, Plaintiff in Error.

*Opinion filed May 13, 1942—Rehearing denied Sept. 17, 1942.*

John T. Houlihan, (Charles P. R. Macaulay, of counsel,) for plaintiff in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, Richard B. Austin, and Alexander J. Napoli, of counsel,) for the People.

Mr. Chief Justice Murphy delivered the opinion of the court:

The plaintiff in error was tried in the criminal court of Cook county under an indictment charging him with the murder of Ada Jane Martin. A jury found him guilty and fixed the penalty at life imprisonment. The motion for

new trial was overruled and judgment entered on the verdict. He has sued a writ of error out of this court to review that judgment.

The only errors assigned are in reference to the giving of certain instructions tendered by the People. It is contended on behalf of the People that the bill of exceptions does not contain all of the evidence and that, therefore, the errors assigned on the instructions can not be considered. The bill is unusual in that it does not contain any of the evidence in the form of questions and answers. It is limited to a statement in the form of a conclusion of the trial judge as to what he considered the evidence on two issues of fact tended to prove. From this the People urge that since the instructions must be based on the evidence, it must be assumed that the evidence was sufficient to support the giving of such instructions.

The necessity of having all the evidence appear in the record depends upon the errors assigned. When an error assigned questions the sufficiency of the evidence to support the verdict and judgment, all the evidence must be preserved in the record or it will be presumed that it was sufficient. In *People* v. *Michael,* 280 Ill. 11, the defendant was convicted of bigamy. The bill of exceptions did not contain any of the evidence heard at the trial. It contained a mere statement that the plaintiff in error did not testify. The defendant requested the court to instruct the jury that he was under no obligation to testify in his own behalf and that his failure to do so should not raise any presumption against him. It was held that the refusal of the instruction was error but that the judgment could not be reversed on the bare presumption that plaintiff in error was prejudiced by the refusal of the instruction. In discussing whether the record was sufficient to present the question it was said: "It has been held that where the error assigned questions the sufficiency of the evidence to support the verdict and judgment all the evidence must be

preserved in the bill of exceptions or it will be presumed that it was sufficient. Where the question is the admission of a specific item of evidence, and the record states that such evidence, with that offered, tended to prove the issue, it is not necessary that all the evidence be preserved in order to raise the question of the admission of the particular item of evidence. So where the record states the evidence tended to prove the issue but was conflicting, the propriety of giving and refusing instructions may be fairly presented without setting out the evidence in full." Civil actions under the old Practice act where a similar question was involved and the same principle applied are, *Nason* v. *Letz,* 73 Ill. 371; *Schmidt* v. *Chicago and Northwestern Railway Co.* 83 id. 405; *Illinois Central Railroad Company* v. *O'Keefe,* 154 id. 508; *Costly* v. *McGowan,* 174 id. 76, and *Johnson* v. *Johnson,* 187 id. 86.

The application of the rule stated in the *Michael case, supra,* permits a consideration of some of the errors assigned on the instructions in this case even though the record submitted in this court does not contain all of the evidence.

The bill of exceptions shows that "the testimony of the witnesses was conflicting and the evidence was such that the jury might have found the issues for the People of the State of Illinois or for the defendant." It is further stated that the People introduced evidence to prove that at about 9 o'clock on the morning of April 29, 1941, the defendant went to the home of Thomas Martin and Ada Martin, the parents of the deceased Ada Jane Martin, that he entered the house, went to the second floor and to the bedroom of Ada Jane Martin while she was in the room. That the defendant was armed with a revolver, that then several shots were heard by persons in said building and that almost immediately thereafter Ada Martin, the mother of Ada Jane Martin, went to the bedroom of her daughter and found her mortally wounded; that the defendant was

then in the hallway outside the bedroom, that he then attacked the mother and beat her severely on the head with the revolver; that Thomas Martin, the father, came to the rescue of his wife, wrested the revolver from the hand of the defendant, and that the revolver then contained six exploded cartridges, that the defendant fled from the premises and was shortly afterward apprehended. It is stated that Ada Jane Martin was then removed to a hospital where she died on the same day from the effects of gunshot wounds. It then contains this statement, "though there was no eyewitness to the homicide, the said evidence, with other evidence in the case, tended to prove that the defendant was guilty of murder in manner and form as was charged in the indictment."

The further recital is that the defendant, to maintain the issues on his part, introduced evidence tending to prove that he did not, with malice aforethought, shoot and kill the said Ada Jane Martin as charged in the indictment, that he had previously enjoyed a general good reputation for peace and quiet and as a law-abiding citizen, and that the evidence tended to prove "that at the time of the alleged homicide he was insane and his mind was so deranged that he was unable to distinguish between right and wrong as to the particular act done and was unable to choose between them and was unable to control his action accordingly; that he was not conscious of the acts which he was committing and that his actions were beyond his control and were not subject to his will; that he did not remember going to said house on April 29, 1941, and discharging his revolver in a bedroom there; that he suffered from said condition of insanity for some days before the said homicide and that he continued to suffer therefrom for several days after the alleged homicide; which evidence, with other evidence in the case, tended to prove that the defendant was not guilty of the murder charged against him by the indictment."

There is the further recital that "the People introduced evidence on rebuttal tending to prove that the defendant was not afflicted with insanity at the time of the alleged homicide and that he committed the murder charged in the indictment with full control of his actions and with intent to take human life and with full understanding of the consequences of his acts." It is recited that defendant testified as a witness on his own behalf. The record does not contain any evidence as to motive or the circumstances leading to the assault or whether the defendant interposed any defenses other than insanity. The statement that the testimony of the witnesses was conflicting and the evidence was such that the jury might have found for either party is not limited to the issue of plaintiff in error's sanity. For all that appears in the record, the evidence may have been in sharp conflict and of near equal weight on some issue other than plaintiff in error's sanity.

Error is assigned to the giving of People's instructions 2, 4, 5, 7, 10, 12, 14, 15, 18 and 20. Instruction number 2 was the usual stock instruction on the credibility of witnesses and enumerated the various things which the jury might take into consideration in determining the weight to be given the testimony of the various witnesses. The concluding paragraph of the instruction was that "the same tests hereinabove given are to be applied to the testimony given by the defendant. You have no right to disregard the testimony of the defendant simply because he is accused of crime." Plaintiff in error concedes that various features of this instruction have been considered by this court and says it was entirely proper for the trial court to mention circumstances which could be legally considered by the jury in determining the credibility of witnesses but contends that the instruction given requires the jury to test the credibility of the witnesses by such circumstances alone. The instruction is not subject to such criticism. It merely states that the jury "may take" into consideration the number of

witnesses testifying for or against any fact or state of facts, the opportunity of the witnesses to know the things about which they testified and their conduct and demeanor while testifying and the various other matters referred to in the instruction. The use of the words "tests hereinabove given," unquestionably referred to various matters the jury might consider in determining the weight to be attached to the testimony of the witnesses but its use could not mislead the jury by giving the impression that the matters mentioned constituted an acid test for the weighing of testimony to the exclusion of all other means.

Instruction numbered 4 defined murder in the language of the statute. Instruction numbered 5 told the jury that if they believed from the evidence, beyond a reasonable doubt, that the defendant committed the assault as alleged in the indictment, and they further find from the evidence, beyond a reasonable doubt, that the assault was committed deliberately and was likely to be attended with dangerous consequences, the malice, or intent, requisite to making out the case as charged would be presumed. The seventh instruction stated that to constitute the offense charged, the intent alleged in the indictment was necessary to be shown, but that it was not necessary to prove it by direct evidence, that if the jury believed, beyond a reasonable doubt, that the intent charged in the indictment was shown by the facts and circumstances in evidence, that was sufficient. The tenth instruction stated that malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. The twelfth instruction was that malice was not confined to ill will toward an individual, but was intended to denote an action flowing from any wicked and corrupt motive—a thing done with a wicked mind, when the act has been attended with such circumstances as evince plain indications of a heart regardless of social duty and fatally bent on mischief. It then stated that malice was implied from any deliberate or cruel act against another

however sudden, which shows an abandoned and malignant heart, and concluded by telling the jury that if it believed, beyond a reasonable doubt, that the defendant committed a deliberate and cruel assault upon the deceased Ada Jane Martin, however sudden, which showed an abandoned and malignant heart, then the jury would be warranted in finding that he committed such an assault with malice within the meaning of the law. These instructions in the form given have been approved by this court in many cases, but plaintiff in error argues that since the evidence on insanity was conflicting, the instructions were erroneous, for the reason that they ignored his defense of insanity.

In *People* v. *Geary,* 297 Ill. 608, a murder case where the defenses were self-defense and insanity, objections were made to instructions given at the request of the People, on the grounds they ignored the defense of insanity. It was there said that to ignore a defense in such an instruction was not erroneous "in the sense that it omitted to state that there was such a defense, which was not necessary and would not have been an objection, but in the sense and meaning that it nullified the defense and was not a fair statement of the law where there was evidence tending to prove such a defense." Limited as the record is in the instant case, it must be presumed that there was sufficient evidence to support the finding that plaintiff in error was sane. The questioned instructions can not be considered in any other light. It will be noted that none of these instructions directed a verdict and that instructions 5, 7, 10 and 12 told the jury what was proof of intent and when malice might be presumed. It is not claimed that any of these instructions or the instruction numbered 4 contained an erroneous statement of the law. This limits the scope of inquiry to the effect the questioned instructions had upon the defense of insanity and in the condition of the record it is necessarily limited to the effect it had upon the law of insanity as pronounced in other instructions given on that subject.

Instruction numbered 8 defined insanity and contained the elements of what constituted insanity as pronounced by this court in various cases. Instruction numbered 9 stated that defendant claimed that at the time of the commission of the act he was insane and therefore not legally responsible for the act, that where insanity is set up it does not devolve on the defendant to prove that he was insane at the time of the commission of the alleged offense by the preponderance of the evidence, but if under the evidence the jury entertains a reasonable doubt as to whether the defendant was sane or insane, then he should be acquitted. Instruction numbered 11 was that all men are presumed to be sane, but that such presumption may be overcome by evidence tending to prove that insanity existed at the time of the commission of the alleged crime, that when evidence is introduced then the presumption of sanity ceases and the prosecution is bound to prove the sanity of the accused beyond a reasonable doubt, so that in this case where the defense of insanity is interposed, if the jury, after considering all the evidence, entertains a reasonable doubt as to the sanity of the defendant at the time of the alleged offense, then he must be acquitted. The fourteenth instruction told the jury that if it believed, beyond a reasonable doubt, that at the time of committing the alleged crime (if you believe from the evidence beyond a reasonable doubt that he did commit such crime) the defendant was able to distinguish right from wrong as to the particular act done and was able to choose between them and was able to control his action accordingly, then you can not acquit him on the ground of insanity. The eighteenth instruction told the jury that a person is presumed to be sane until the contrary was shown and the nineteenth instruction was that if the evidence in this case was sufficient to raise a reasonable doubt as to the sanity of the defendant, then the jury should find the defendant not guilty, and instruction numbered 20 told the jury that the insanity of the defendant either before or after the commission of a

crime can not excuse the crime. Only insanity existing at the very time of the crime can excuse the same.

None of the instructions numbered 4, 5, 7, 10 and 12 undertakes to set forth the elements that would warrant a verdict of guilty. Each was limited to an explanation of the term which it purported to explain and define. None of them can be said to have the effect of destroying plaintiff in error's defense of insanity or nullifying the law in reference to that defense as given in other instructions. The instructions given must be taken as a series, (*Henry* v. *People,* 198 Ill. 162, 197; *People* v. *Phipps,* 268 id. 210, 216; *People* v. *Hicketts,* 324 id. 170,) and when the instructions in this case are so considered, they fairly present the law. In *People* v. *Haensel,* 293 Ill. 33, 40, it was said: "This court will not reverse because the instruction objected to does not contain all the law of the case unless the peculiar circumstances of the case render the instruction misleading." Also, see *Henry* v. *People, supra; McCoy* v. *People,* 175 Ill. 224; *People* v. *Geary, supra; People* v. *Haensel, supra; People* v. *Phipps, supra; Upstone* v. *People,* 109 Ill. 169, and *People* v. *Casey,* 231 id. 261.

Plaintiff in error relies upon *People* v. *Moor,* 355 Ill. 393. The instructions to which the quotation from the opinion referred are not set forth in the opinion. Another distinction between the cases is that all the evidence appeared in the record in that case while in the instant case the scope of inquiry is limited by the failure to present the evidence that was introduced on the trial. There was no error in the giving of said instructions.

The objections to other instructions have been considered and are found in some instances to be such that they cannot be considered on the record presented and in other cases are without merit.

For the reasons assigned, the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*