MARTIN FLANIGAN, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

Drunkenness, although carried to the extent that it overcomes the will, and incapacitates from controlling the action of the mind, is no excuse for a crime; and voluntary intoxication, although amounting to a frenzy, does not exempt one who commits a homicide without provocation, from the same construction of his conduct, and the same legal inferences upon the question of intent, as affecting the grade of his crime, which are applicable to a person entirely sober.

Upon the trial of an indictment for murder in the first degree the evidence was to the effect that the prisoner was in the habit of drinking to excess, was frequently intoxicated, and had been drinking heavily on the day of the homicide. His counsel requested the court to charge, that " from all the evidence in the case, the jury may believe, if they see fit, that the prisoner may have been the victim of an appetite for drink entirely overcoming his will, and amounting to a disease, and that if they did so believe, they must acquit the prisoner, unless they believe, beyond a reasonable doubt, that the act was not committed while his mind was overwhelmed by the effects of the liquor so taken." The court refused so to charge. *Held* no error; that the effect of the proposition would be to excuse for the crime, if committed while the prisoner was laboring under intoxication, so that his will was overcome; that the proposition was also objectionable as it assumed that if the prisoner had become the victim of an appetite for drink, overcoming his will and amounting to a disease, he should be acquitted, although able to distinguish between right and wrong at the time of the homicide and with respect to it.

The court also refused to charge that the jury might take into consideration the question of drunkenness as affecting the question of premeditation. *Held* no error.

As to whether intoxication could properly be taken into consideration as affecting the question of deliberation, *quære.*

(Argued October 3, 1881; decided October 28, 1881.)

ERROR to the General Term of the Superior Court of the city of Buffalo, to review judgment entered upon an order made July 23, 1881, which affirmed a judgment of a criminal term of said court, entered upon a verdict convicting the plaintiff in error of the crime of murder in the first degree.

The plaintiff in error was indicted for the murder of one John Karins. It appeared by the evidence that the deceased kept a boarding-house for laborers upon a railroad, and also was foreman or boss. The prisoner boarded with Karins, and had formerly been at work under him, but about three months before the murder Karins caused him to be discharged. The prisoner went to Karins' room about 10 or 11 P. M., and stabbed him while he was asleep. The prisoner was in the habit of drinking to excess and was frequently intoxicated; he had been drinking heavily on the day of the murder.

The prisoner's counsel, among other things, requested the court to charge " that from all the evidence in the case the jury may believe, if they see fit, that the prisoner may have been the victim of an appetite for drink entirely overcoming his will and amounting to a disease; and if they do so believe they must acquit the prisoner, unless they believe, beyond a reasonable doubt, that the act was not committed while his mind was overwhelmed by the effects of the liquor so taken."

The court refused so to charge, and said counsel duly excepted.

Said counsel also requested the court to charge " that the jury may take into consideration the question of drunkenness as affecting each of the facts of deliberation or premeditation." The court declined to so charge and an exception was duly taken.

Said counsel also asked the court to charge "that the jury may take into consideration the question of drunkenness as affecting the fact of deliberation."

To this the court replied, " I have charged that, I think; I leave that to the jury, as to the two degrees of murder, and whether there was deliberation or not."

The court did charge at the request of said counsel " that from all the evidence in the case the jury may believe that the

act of which the prisoner is charged may have been done in a moment of drunken frenzy ; and that if they do so believe, they cannot predicate deliberation or premeditation of the act, and, therefore, cannot find the prisoner guilty of more than manslaughter in one of its degrees."

Said counsel also requested the court to charge that "if the jury believe that the prisoner was under the influence of liquor, or drunk, at the time of the commission of this act, they may take into consideration his drunkenness as to whether it does not render more weighty the presumption of his having yielded to sudden passion, rather than to previous malice."

To this the court replied, "I will charge that the jury may look at that consideration."

*Ammi Cutter* for plaintiff in error. The court erred in refusing to charge as requested that, "from all the evidence in the case, the jury may believe, if they see fit, that the prisoner may have been the victim of an appetite for drink, entirely overcoming his will and amounting to a disease, and that, if they do so believe, they must acquit the prisoner unless they believe, beyond a reasonable doubt, that the act was not committed while his mind was overwhelmed by the effect of the liquor so taken." (2 Greenleaf on Ev., § 374; 3 id., § 6; *People* v. *Rogers*, 18 N. Y. 9; *People* v. *Sprague*, 2 Park. 43; 2 Greenleaf on Ev., § 372; *Rogers' Case*, 7 Metc. 500, note; *The State* v. *Pike*, 4 N. H. 399.) The court erred in refusing to charge as requested, "I request your honor to charge that the jury may take into consideration the question of drunkenness as affecting each of the facts of deliberation or premeditation." (*People* v. *Rogers*, 18 N. Y. 26; *People* v. *Kenny*, 31 id. 330; *Pirtle* v. *State*, 9 Humph. 663; *Norfleet* v. *State*, 4 Sneed, 340; *Swan* v. *State*, 4 Humph. 186; *Cornwell* v. *State*, Mar. & Yer. 147; *Haile* v. *State*, 11 Humph. 154; *Bennett* v. *State*, Mar. & Yer. 146.) Intoxication, though not an excuse for crime, may reduce the crime of murder to the second degree. (*Jones* v. *Comm.*, 75 Penn. St.403; *Comm.* v. *Crozier*, 1 Brewst. 349; *Comm.* v. *Hart*, 2 id. 546; *Comm.* v. *Perrin*,

3 Phila. 229; *Comm.* v. *Dunlop,* Lewis' Cr. L. 394; *Comm.* v. *Haggerty,* id. 402; *Comm.* v. *Baker,* 33 Leg. Int. 367; *Comm.* v. *Platt,* id. 436.)

*Edward W. Hatch,* district attorney, for defendant in error. The evidence given on behalf of the prisoner neither proved nor tended to prove insanity. (*Williams* v. *The People,* 32 N. Y. 705; *Flanigan* v. *People,* 52 id. 467; *Cowley* v. *The People,* 8 Abb. N. C. 1; *Shofflin* v. *The People,* 4 Hun, 16; 62 N. Y. 229; *Brotherton* v. *The People,* 75 id. 189; *Reg.* v. *Stokes,* 3 C. & K. 185, ROLFE, B.; *Kinney* v. *The People,* 31 N. Y. 330; *People* v. *Waltz,* 50 How. Pr. 204, 213.) The court properly refused the request to charge " that, from all the evidence in the case, the jury may believe, if they see fit, that the prisoner may have been the victim of an appetite for drink entirely overcoming his will and amounting to a disease, and that, if they do so believe, they must acquit the prisoner unless they believe, beyond a reasonable doubt, that the act was not committed while his mind was overwhelmed by the effects of the liquor so taken." (*Flanigan* v. *People,* 52 N. Y. 457; *The People* v. *Moet,* 58 How. 467; *Doughty* v. *Hope,* 3 Denio, 594; *Vosburg* v. *Tator,* 32 N. Y. 561; *People* v. *Bansley,* id. 525; *Parsons* v. *Brown,* 15 Barb. 590; *Patterson* v. *The People,* 46 id. 625; *McGingy* v. *U. S. L. Ins. Co.,* 77 N. Y. 495; *Jarvis* v. *Driggs,* 69 id. 143; *Bagley* v. *Smith,* 10 id. 189; *Hodges* v. *Cooper,* 43 id. 216; 3 R. S. [6th ed.], 928, § 5; *Kinney* v. *The People,* 31 N. Y. 330; *People* v. *Battin,* 49 How. Pr. 392.) The request of the prisoner's counsel to charge, that "when the evidence, as it does in this case, raises the question of insanity, that the prisoner was entitled to the benefit of the doubt, and that the burden of proving his insanity is not upon him," was properly refused. (*Brotherton* v. *People,* 75 N. Y. 159.)

MILLER, J. It is claimed that the judge erred upon the trial in refusing to charge, as requested by the prisoner's counsel, "that, from all the evidence in the case, the jury may believe,

if they see fit, that the prisoner may have been the victim of an appetite for drink, entirely overcoming his will and amounting to a disease; and that, if they so believe, they must acquit the prisoner, unless they believe, beyond a reasonable doubt, that the act was not committed while his mind was overwhelmed by the effects of the liquor so taken." The proposition contained in this request was to the effect that the jury were authorized to believe that the prisoner was the subject of an appetite for intoxicating drinks, which entirely controlled his will, and to the extent of becoming a disease, and that he was not responsible unless the crime was committed while he was not under the influence of such disease.

The effect of this proposition would be to excuse the prisoner from the consequences of the crime committed, if he was laboring under intoxication so that his will was overcome, and not under his control at the time; in other words, that drunkenness, if carried to the extent of producing incapacity to control the action of the mind and will of the prisoner, would be an excuse for the crime committed.

The rule is well settled that voluntary intoxication of one who, without provocation, commits a homicide, although amounting to a frenzy, does not exempt him from the same construction of his conduct, and the same legal inferences, upon the question of intent, as affecting the grade of his crime, which are applicable to a person entirely sober. (*People* v. *Rogers*, 18 N. Y. 9.)

Within the rule laid down in the case cited, we think that the request to charge cannot be sustained. The position of the learned counsel for the prisoner is, that he had a right to go to the jury upon the question whether intoxication was a disease, as described in the request, and whether the prisoner was afflicted with it, and, if the jury found both of these facts, the drunkenness could not have been voluntary, and, if the jury believed the mind was overwhelmed by means thereof, that the prisoner must be excused as an insane man. It may be answered that no such distinct request was made; but aside from this, the position taken would be adverse to the principle

which has been established by a long series of decisions, and, if enforced, might lead to exonerate offenders for crimes committed by them when under the influence of intoxicating drinks, and thus furnish an excuse for the commission of the most heinous offenses. The authorities all agree upon the proposition that mental alienation, produced by drinking intoxicating liquors, furnishes no immunity for crime, and, to sustain the doctrine asserted, it would be necessary to overrule this well-established principle. The proposition contained in the request was also objectionable, as it assumed that, if the prisoner had become the victim of an appetite for strong drinks so as to overcome his will, and amounting to a disease, even although he was able to distinguish between right and wrong at the time of, and with respect to, the act committed, he should be acquitted. (*Flanagan* v. *The People*, 52 N. Y. 467.)

The finding of the jury that the prisoner was affected with the alleged disease would not exonerate him from responsibility for the crime, and his intoxication did not authorize the court to charge as requested.

No error was, therefore, committed in the refusal of the judge to grant the request, nor was there any error in the refusal of the judge to charge, as requested, that the jury might "take into consideration the fact of drunkenness, as affecting each of the questions of deliberation and premeditation."

The question presented by this request has been the subject of consideration in the reported decisions in the courts of this State. In *The People* v. *Rogers* (*supra*), a request was made by the prisoner's counsel to charge the jury to the effect that drunkenness might exist to such a degree that neither an intention to murder, nor a motive for the act, could be imputed to the prisoner. The request was refused, and DENIO, J., in discussing the question, says: "This would be precisely the same thing as advising them that they might acquit of murder on account of the prisoner's intoxication if they thought it sufficient in degree. It has been shown that this would be opposed to a well-established principle of law." He further remarks: "The judge ought to have charged that if a man

makes himself voluntarily drunk, that is no excuse for any crime he may commit while he is so, and that he must take the consequences of his own voluntary act." The doctrine thus laid down in principle would sustain the refusal of the judge to charge as requested in the case at bar. In *Kenny* v. *The People* (31 N. Y. 330), the prisoner was convicted of murder in the first degree, committed while in a state of voluntary intoxication, upon a sudden impulse. The court instructed the jury that voluntary intoxication can furnish no excuse or immunity for crime, and so long as the offender is capable of conceiving a design, he will be presumed, in the absence of contrary proof, to have intended the natural consequences of his own acts. The judge was requested to charge, among other things, that intoxication may be considered in determining whether the homicide was committed by a premeditated design, which was refused, and it was held by this court that there was no error in declining to charge as requested, and POTTER, J., cites from *The People* v. *Rogers*, the remarks we have already quoted from the opinion in that case, and says, that " *The People* v. *Rogers*, and the opinions delivered therein and the authorities cited, are conclusive and control this case." He further remarks that " the rule established in that case, and in fact the uniform rule in all the cases is, that where the act of killing is unequivocal and unprovoked, the fact that it was committed while the perpetrator was intoxicated cannot be allowed to affect the legal character of the crime." This case is directly in point in regard to the subject of premeditation, and the principle laid down would seem to cover deliberation also. As, however, the judge subsequently, in response to a request made by the prisoner's counsel to the effect that the jury might take into consideration the question of drunkenness as affecting the fact of deliberation, said that he had so charged and had left it to the jury to determine as to the degree of murder and whether there was deliberation, and thus allowed the jury to consider the intoxication of the prisoner in reference to deliberation, it is not necessary to determine the question whether the refusal to charge as to deliberation was erroneous.

The judge also charged, in response to a request of the prisoner's counsel, that if the jury believed that the prisoner was under the influence of liquor or drink at the time of the commission of the act, they might take into consideration the drunkenness of the prisoner as to whether it did not render more weighty the presumption of his having yielded to sudden passion rather than to previous malice. In an earlier portion of his charge, he stated that premeditation and deliberation was essential to establish murder in the first degree, and the entire charge on the question discussed was quite as favorable to the prisoner as the evidence warranted. The evidence was quite clear as to the intention of the prisoner, and to sanction a rule that his drunkenness was an excuse would be adverse to the whole current of authority and what has been understood to be well-established law.

There was no error in the refusal of the judge to direct the jury, as requested by the prisoner's counsel, that they could not find the prisoner guilty of more than murder in the second degree. The proposition contained in this request assumes that there was no evidence of premeditation or deliberation upon which the jury could find the prisoner guilty of murder in the first degree. This assumption was not warranted. The evidence showed that, about three months previous to the murder, the prisoner had been at work as a laborer under the deceased, who had discharged or caused him to be discharged; that the prisoner entertained unfriendly feelings toward the deceased; that shortly after the murder he declared he had fixed him at last; that the deceased had abused him; that he had satisfaction now; that he was not drunk, and knew what he was doing and saying, and used language indicating that he had acted with a deliberate purpose and a premeditated design to effect his death. It also appeared that he went to the room of deceased and with no immediate cause for provocation, and while the deceased lay there unconscious of danger, he turned down the bed-clothes and stabbed him with a knife to the heart, using strong and abusive language at the time. The evidence was quite clear that the prisoner had conceived the murder of the deceased,

and even although he was under the influence of intoxicating drinks, it cannot be claimed, upon any sound principle, that there was no question for the jury to determine as to the deliberation and premeditation of the prisoner.

Several questions are raised as to the ruling of the judge upon the trial in regard to the testimony. The answer of the witness Flanigan upon re-direct examination, as to the declaration of the prisoner after the crime was committed, to wit : " I have stabbed Karins, get a mass said for my soul," is not liable to any valid objection. What he said as to having a mass said for his soul was not objected to, and no exception was taken to the evidence, nor was there any abuse of discretion on the part of the judge in allowing the question to which this response was an answer.

The weight to be given to the evidence, under the circumstances, was for the jury to determine, in view of the facts.

Nor was any error committed in excluding the question put upon the cross-examination to the witness Flanigan as to the time when he went to a certain place, which was named. It was not material, related to a period some time after he had seen the prisoner, and after the full examination which had been permitted, it was discretionary with the judge to determine whether the inquiry should be further pursued. (*People* v. *Casey*, 72 N. Y. 393–399.)

The question put to the witness Mrs. Mangan, as to her paying the fine of the prisoner when he had been arrested for drinking, was irrelevant, and could have no direct or remote bearing upon the question arising as to the prisoner's guilt or innocence. It was rather remote for the purpose of accounting for the prisoner being at the house, and the testimony would not aid, we think, in contradicting the presumption of an intention to kill, or in showing that the act was rather one of temporary insanity or a drunken frenzy, than deliberation and premeditation. Above all, what had been done by or for the prisoner on prior occasions could not affect, in any way, his acts and conduct at the time the crime was committed, or relieve him from responsibility for the same.

No other question is presented by the counsel for the prisoner, and we are brought to the conclusion that no error was committed upon the trial which demands a reversal of the conviction. The judgment should, therefore, be affirmed, and the record remitted to the court below, with directions to proceed as required by law.

All concur; Andrews, J., entertained some doubt upon the point whether the court did not err in refusing to charge that the jury might consider the fact of drunkenness upon the point of premeditation, as well as upon the point of deliberation.

Judgment affirmed.