Argued May 5, decided July 12, 1910.

## STATE *v.* TRAPP.

[109 Pac. 1094.]

CRIMINAL LAW—DEFENSES—INTOXICATION—INSANITY.

1. Under Section 1383, B. & C. Comp., providing that the defense of insanity must be proved beyond a reasonable doubt, and that no act by a person while in a state of voluntary intoxication shall be less criminal by reason of his condition, but the fact may be considered in determining intent, etc., drunkenness, to be available as a defense, must result in a diseased condition of the mind, such as delirium tremens or other form of insanity.

HOMICIDE—QUESTIONS REVIEWABLE—IMMATERIAL QUESTIONS.

2. Where accused, relying on drunkenness as a defense, was found guilty of murder in the second degree, rulings and instructions on the question of drunkenness as affecting premeditation were not prejudicial.

CRIMINAL LAW—DEFENSES—BURDEN OF PROOF.

3. Under Section 1393, B. & C. Comp., providing that the defense of insanity must be proved beyond a reasonable doubt, and that no act by one in a state of voluntary intoxication shall be less criminal by reason thereof, etc., one relying on intoxication as a defense has the

burden of proving that the intoxication resulted in a diseased condition of his mind, such a delirium tremens or other form of insanity.

HOMICIDE—MURDER IN THE SECOND DEGREE—DEFENSE—INTOXICATION.

4. Intoxication alone is no defense to a charge of murder in the second degree.

WITNESSES — CRIMINAL LAW — CROSS-EXAMINATION — DISCRETION OF COURT.

5. Cross-examination of a witness of accused as to the latter's reputation for peace and quiet is largely in the discretion of the trial court, and will not be disturbed, unless abused.

CRIMINAL LAW—EVIDENCE—CONCLUSION OF WITNESS.

6. A question whether there was anything to show a studied attempt at concealment by accused is improper, as calling for the opinion of the witness, and the jury must determine from the facts proved whether accused attempted to conceal himself.

HOMICIDE—INSTRUCTIONS—MISLEADING INSTRUCTIONS.

7. An instruction that if the jury have a reasonable doubt growing out of the evidence or want of evidence, and "not out of the argument of counsel" whether the killing was done purposely and with deliberate and premeditated malice, accused cannot be found guilty of murder in the first degree is not prejudicial to accused, though the quoted words are ill-advised, for the charge does not disparage proper argument of counsel.

CRIMINAL LAW—"REASONABLE DOUBT."

8. A "reasonable doubt" is a doubt arising out of the evidence, and the jury may not go outside of the evidence to hunt up doubts on which to acquit accused.

CRIMINAL LAW—INSTRUCTIONS—CAUTIONARY INSTRUCTIONS.

9. An instruction, cautioning the jury against sympathy for accused or his relatives, or against the influence of public prejudice against the crime or the one charged therewith, and that the jury must try the case according to the law and the evidence, is proper.

From Baker: WILLIAM SMITH, Judge.

Defendant, D. R. Trapp, was indicted for murder in the first degree for shooting and killing one Chris Jasperson in Huntington, Baker County, Oregon, on July 27, 1908.

Defendant was a bartender in the saloon of James Reedy, and the deceased was a bartender in the saloon of O. S. Fraser. At 4:20 o'clock P. M. of that day, defendant, who had been drinking intoxicants, after wrestling with Fraser in a friendly way attempted to scuffle with Jasperson, who told him to quit, that he was not feeling well; and when defendant persisted, Jasperson, in vulgar language, against repulsed him and with his open hand

pushed him back. Defendant then went out, returned in about five minutes, and called for a glass of whisky and a beer chaser. Before drinking, however, he passed into the back room, where Jasperson was sitting upon a table, Fraser and another man being present, and exclaimed, "Now, you son of a bitch, go through," and shot Jasperson in the eye, and he fell to the floor dead. On the morning of that day, about 6 or 7 o'clock, Squirrel, also a bartender in Fraser's saloon, at his own suggestion, loaned to defendant the revolver with which the shooting was done, as defendant was going to the Honky Tonk, a dance hall and saloon at the outskirts of the town. Soon thereafter defendant left it in Hodges' saloon, about a block from Fraser's, with O. J. Paul, the bartender, who says defendant returned in the afternoon some time and got it, saying: "Give me that gun, I want to take it back to Slim (Jasperson)."

The testimony shows that defendant had been drinking during the night before and on that day. On the trial he was found guilty of murder in the second degree, and from a judgment thereon he appeals. AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Charles F. Hyde* and *Mr. John L. Rand.*

For the State there was a brief over the names of *Mr. William S. Levens,* District Attorney, *Mr. Samuel White,* of counsel, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Levens.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. There is no controversy as to the killing or how it was done; nor that there was an absence of any serious provocation therefor. But the defense is based wholly upon the contention that defendant was drunk, and most of the numerous assignments of errors relate to rulings of the court in the admission of evidence and the instructions given relating to the effect of the intoxicants upon

defendant, and his mental condition resulting therefrom, which rulings, as defendant insists, were to the effect that if defendant was voluntarily intoxicated, regardless of whether the result was a diseased condition of his mind, rendering him incapable of knowing the difference between right and wrong, nevertheless the jury must find him guilty of murder in the second degree, if they found him guilty at all, and defendant urges that this is reversible error.

2. There is nothing disclosed in the record, other than defendant's own statements, to indicate that he had been doped, as suggested by counsel, or that he did not know what he was doing. It seems that, although drinking probably to excess, he was going about talking with his friends, wrestling with Fraser, and seeking to scuffle with Jasperson, and when he seems to have taken offense at something said or done in Fraser's saloon, he knew where he had left the gun, went after it, returned, ordered more drinks, and before drinking sought out the individual at whose words or acts he had taken offense, and shot him. There is nothing in this conduct on his part, or noticed by those who saw him, that indicates a diseased mind or inability on his part to distinguish between right and wrong, or that he did not know what he was doing.

As we understand Section 1393, B. & C. Comp., drunkenness alone is not insanity, and to constitute it a defense for crime it must result in a diseased condition of the mind as the result of continued drunkenness, such as delirium tremens or other form of insanity. There are many cases holding that mental incapacity, produced by voluntary intoxication, and existing only temporarily at the time of the commission of the criminal act, is no defense to a prosecution therefor. For a full discussion of this subject, see note to *Harris* v. *United States,* 32 L. R. A. 465; *Upstone* v. *People,* 109 Ill. 169; *State* v.

*Hundley,* 46 Mo. 414; *State* v. *Thompson,* 12 Nev. 140; *Fisher* v. *State,* 64 Ind. 435; *Gunter* v. *State,* 83 Ala. 96 (3 South. 600) ; *People* v. *Ferris,* 55 Cal. 588; *Beck* v. *State of Georgia,* 76 Ga. 452.

In *Buckhannon* v. *Commonwealth,* 86 Ky. 110 (5 S. W. 358), it is held that on a prosecution for murder a witness cannot be asked whether defendant, at the time of the killing, had mind enough to know right from wrong, where there was no pretext that he was insane, and his condition arose from his then voluntary drunkenness. And in *Aszman* v. *State,* 123 Ind. 347 (24 N. E. 123: 8 L. R. A. 33), it is said that drunkenness is not insanity and does not constitute an unsound mind, unless the derangement which it has caused has become fixed and continued. See, also, *Gunter* v. *State,* 83 Ala. 96 (3 South. 600) ; *Flanigan* v. *People of State of New York,* 86 N. Y. 554 (40 Am. Rep. 556) ; *Harris* v. *United States,* 8 App. D. C. 20 (32 L. R. A. 465). So that the fact alone, that one is intoxicated, is not a defense for crime, except that it may be taken into consideration in determining the purpose, motive, or intent with which the act is done, as specified in Section 1393, B. & C. Comp.; otherwise it is unavailing, unless it results in delirium tremens or other form of insanity. This has been announced by this court in several cases. In *State* v. *Zorn,* 22 Or. 591 (30 Pac. 317), the trial court instructed the jury that voluntary intoxication "does not render the act less criminal, and in this sense, I charge you, is not available as a defense; but upon the question whether the act was done with deliberation and premeditation, * * it is proper to be considered by you * * in determining the degree of guilt." Mr. Justice Lord, in passing on that instruction, says: "All the authorities agree that drunkenness is no excuse for crime. But where * * statutes * * make deliberation and premeditation ingredients of the crime of murder in the first

degree, the question of intent becomes a material fact, and evidence of intoxication is admissible and proper to be taken into consideration by the jury in determining the question as to premeditation and deliberation in murder of the first degree. The defendant's intoxication is submitted to the jury simply for the purpose of showing a want of premeditation." In *State* v. *Hansen*, 25 Or. 391 (35 Pac. 976: 36 Pac. 296), Mr. Justice MOORE cites with approval from *State* v. *Coleman*, 27 La. Ann. 691: "Drunkenness is no excuse for a crime, and any state of mind resulting from drunkenness, unless it be a permanent and continuous result, still leaves the person responsible for his acts." And Justice BEAN, in *State* v. *Weaver*, 35 Or. 415 (58 Pac. 109), cites *State* v. *Zorn*, upon this question, as entirely sound, and says: " 'Voluntary immediate drunkenness,' says Anderson, J., in *Will's* v. *Com.*, 32 Grat. [Va.] 936, 'is not admissible to disprove malice, or to reduce the offense to manslaughter. But where, by reason of it, there is wanting that deliberation and premeditation which are necessary to elevate the offense to murder in the first degree, it is properly ranked as murder in the second degree; as the courts have repeatedly decided' " (citing, also, *Pugh* v. *State*, 2 Tex. App. 545). He further says: "It is only when the actual existence of some particular motive, purpose, or intent is a necessary element in the crime charged that the intoxication of the defendant becomes important, and not when the essential ingredients of the crime are implied by law from the manner of its commission." And that it was not "error to refuse to instruct them (the jury) that it (intoxication) might be sufficient to reduce the crime to manslaugher." To the same effect are *State* v. *Blodgett*, 50 Or. 329 (92 Pac. 820) ; *Beck* v. *State of Georgia*, 76 Ga. 452, and *Buckhannon* v. *Commonwealth*, 86 Ky. 110 (5 S. W. 358).

In the case before us, there was evidently no evidence

tending to show insanity, either permanent or temporary, on the part of defendant or other condition than voluntary, immediate drunkenness, and as the verdict was "guilty of murder in the second degree," the effect of the intoxication or condition of defendant's mind, as affecting the question of premeditation, is not involved in this appeal. Therefore, the ruling of the trial court and its instructions upon the questions, as to the degree of defendant's intoxication or its effect upon his mind, were not prejudicial. This also disposes of the ruling upon the opinion evidence as to defendant's mental condition.

3. Defendant complains also that the court erred in placing the burden upon him to prove the intoxication beyond a reasonable doubt. By Section 1393, B. & C. Comp., the burden is on the defendant to prove his insanity beyond a reasonable doubt, but counsel urges that this provision does not apply to the question of intoxication mentioned in the same section. As we have already seen, the intoxication of defendant, to be available as a defense, must result in a diseased condition of the mind, delirium tremens or some other form of insanity, and therefore in such a case the burden is upon defendant, as in other cases of insanity.

4. Insanity from excessive drinking was the defense in *State* v. *Hansen*, 25 Or. 391 (35 Pac. 976: 36 Pac. 296), where the defendant was found guilty of murder in the first degree, and it is there held by Mr. Justice MOORE that the burden was upon defendant to prove it beyond a reasonable doubt. In the case before us, murder in the first degree is eliminated by the verdict, and proof of the intoxication alone is no defense to the charge of murder in the second degree.

5. The cross-examination by the district attorney of the witness Wilkinson, as to defendant's reputation for peace and quiet, was largely within the discretion of

the trial court, and no abuse of that discretion is disclosed in the matter complained of. *State* v. *Reihart,* 26 Or. 466, 482 (38 Pac. 822) ; *Sayres* v. *Allen,* 25 Or. 211 (35 Pac. 254).

6. Witness Hannon, who made the arrest, testified for the State to certain facts that might tend to show an effort on the part of defendant to escape arrest, and probably for the purpose of meeting any such effect from his evidence, he was afterward called by defendant and asked: "Was there anything to show a studied attempt at concealment?" to which an exception was sustained. This question only called for the opinion of the witness. It was the province of the jury to determine from the facts proved whether an attempt to conceal himself was made by defendant, and the facts only should have been asked for.

7. The seventh instruction given by the court contained a definition of deliberation and premeditation necessary to constitute murder in the first degree, and included the following language:

"If, however, you have a reasonable doubt, growing out of the evidence or want of evidence, and not out of the argument of counsel, as to whether the killing was done purposely and of deliberate and premeditated malice, then you cannot find the defendant guilty of murder in the first degree."

An exception was taken thereto, defendant contending that it tended to deprive him of the benefit of the argument of his counsel. The use of the language "and not out of the argument of counsel" was ill-advised, unless there had been something said in the argument of counsel that might improperly tend to raise such a doubt, which does not appear from the record.

8. It is, however, clear that the court did not intend to disparage the proper argument of counsel, but only sought to caution the jury as to the real source from which a doubt should arise. A reasonable doubt must

be a doubt which arises out of the evidence in the case, viz., the unsatisfactory nature of the evidence. The law prohibits the jury from going outside the evidence to hunt up doubts upon which to acquit a defendant. Sackett, Instructions, p. 646. The statement in the instruction complained of could not have been prejudicial.

9. The part of the twentieth instruction in which the jury are cautioned against sympathy for defendant or his relatives, and also against the influence of public prejudice against such crimes or against one charged with a crime of the gravity of this one, and told that it was their sworn duty to try the case according to the law and evidence, and to lay aside both sympathy and prejudice, was evidently fair and impartial, and not an improper instruction.

We find no error in the record.

The judgment is affirmed.          AFFIRMED.