Argued July 8, affirmed July 31, dissenting opinion filed September 8, 1914.

## FURBECK *v.* I. GEVURTZ & SON.

(143 Pac. 654; 143 Pac. 922.)

**Appeal and Error—Witnesses—Cross-examination—Scope and Extent—Discretion of Court—Review.**

1. Under Section 860, L. O. L., permitting an adverse party to cross-examine any witness as to any matter stated in his direct examination or connected therewith, the extent of cross-examination to test memory, discover bias or prejudice, or ascertain the truth of the witness' declarations rests largely in the court's discretion, which will not be disturbed except in case of an abuse.

Witnesses—Cross-examination—Scope and Extent.

2. Any evidence tending to explain, modify or disprove a witness' testimony given in chief may be demanded of him on cross-examination.

Witnesses—Cross-examination—Scope and Extent.

3. Cross-examination of a witness as to collateral, irrelevant or immaterial matters should be denied.

Negligence—Evidence—Alterations After Injuries.

4. Evidence of an alteration in conditions after an accident is inadmissible unless it is offered to substantiate an issue that the agency causing the hurt could not have been operated in the changed condition.

Negligence—Evidence—Alterations After Injuries.

5. Where a witness for defendant, in an action for personal injuries, testifying as to measurements of the iron platforms which had fallen and hurt plaintiff, remarked that the iron had been removed, cross-examination as to a change of place of the storing of the iron-work after the injury, plaintiff's counsel stating he desired to show that the platforms could have been placed in the gutter, was inadmissible.

Appeal and Error—Harmless Error—Admissibility of Evidence.

6. Under Article VII, Section 3, of the Constitution, as amended, providing that no fact tried by jury shall be otherwise re-examined unless the court can affirmatively say that there is no evidence to support the verdict and if the Supreme Court shall be of opinion that the judgment appealed from was such as should have been rendered, it shall be affirmed, notwithstanding any error during the trial, error in cross-examining a witness as to a change of place of storing the iron, the fall of which injured plaintiff, must be regarded as harmless, where the Supreme Court cannot say there is no evidence to support the verdict.

Trial—Instructions—Applicability to Issues.

7. In an action for personal injuries, an answer, alleging assumption of risk by plaintiff, does not authorize submission to the jury of the question of plaintiff's negligence.

Negligence—Contributory Negligence—Assumption of Risk.

8. The defense of assumption of risk can be invoked only in cases between master and servant.

Dismissal and Nonsuit—Codefendants.

9. In an action against two or more defendants for negligently causing a personal injury, dismissal as to one of the defendants with the consent of plaintiff is not error as to the other defendant.

Contribution—Joint Tort-feasors—Negligence.

10. Where a personal injury was not caused intentionally, a right of contribution exists between the persons whose negligence caused the injury.

[As to contribution between tort-feasors, see note in Ann. Cas. 1913B, 938.]

From Multnomah: JAMES W. HAMILTON, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This action was commenced by R. J. Furbeck against the I. Gevurtz & Son, a corporation, Henrietta E. Failing, Mary F. Failing and Emily F. Carbell, the Hurley-Mason Company, a corporation, John Doe Olsen, doing business as the Olsen Ice & Coal Company, and the Portland Wire & Iron Works, a corporation, to recover damages for a personal injury.    Upon motions therefor, judgments of nonsuit were granted in favor of the I. Gevurtz & Son, Henrietta E. Failing, Mary F. Failing, and Emily F. Carbell, and the Hurley-Mason Company. When all the testimony had been received the court, upon its own motion, but with the consent of the plaintiff, granted a nonsuit as to S. A. Olsen, who had been sued as John Doe Olsen, to which action the counsel for the remaining defendant excepted.    The cause being submitted, resulted in a verdict and judgment for $2,000 against the Portland Wire & Iron Works, and it appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Richard W. Montague.*

For respondent there was a brief and an oral argument by *Mr. Wilfred E. Farrell.*

MR. JUSTICE MOORE delivered the opinion of the court.

MR. JUSTICE BURNETT dissenting.

It appears from the record before us that as the heirs of Henry F. Failing, deceased, Henrietta E. Failing, Mary F. Failing and Emily F. Carbell own at the southeast corner of the intersection of Fifth and Alder

Streets, Portland, Oregon, a tract of land which borders 100 feet on each of those streets. A contract had been entered into whereby the Hurley-Mason Company, at the time of the injury complained of, was erecting on the premises a large building which had been leased to, and when completed was to be occupied by, the I. Gevurtz & Son. Subject to a compliance with the ordinances of that city, permission had been granted the Failing estate to place material in front of the building to a line eight feet north of the curb on Alder Street, and on the west to a line eight feet in the clear from the car-track on Fifth Street, reserving, however, a gutter space of two feet between the curb line and any material that might be placed in the streets. In executing its contract the Hurley-Mason Company put up temporary canopies over the sidewalks, extending from the curb lines of the streets to the building, to protect pedestrians from injury by falling material. The contract to construct and put up the necessary fire-escapes was sublet to the Portland Wire & Iron Works. This corporation, on the day prior to the accident, sent two iron latticed platforms, each 12 feet long and 3 feet, 6 inches wide, by a drayman, who delivered them on Fifth Street, within the space limited by the building permit, placing the long edges on the pavement, the upper edges inclining toward and resting against a quantity of hollow tiles, piled near the southwest corner of the building. The south end of the platforms, however, projected about two feet beyond the tiles against which they leaned. The next day the plaintiff walking north on the east side of Fifth Street, observing the canopy referred to, and, disliking to pass under it, stepped into the street to go around the obstacles piled up and left therein. As he did so an

acquaintance met him, and they engaged in a conversation, standing near the iron platforms. In the meantime an ice-wagon drawn by two horses which were driven by a servant of S. A. Olsen was halted just south of the building mentioned to deliver ice. Having performed that service, the driver backed his horses and turned their heads to the west, and in doing so the end of the wagon tongue struck the extended ends of the platforms, causing them to fall upon the plaintiff's left leg, producing a Pott's fracture, which constitutes the injury complained of herein.

At the trial E. H. Bliss, the superintendent of the Portland Wire & Iron Works, testified on direct examination that, having been notified of the accident, he went to the building where it occurred and made some measurements, concluding his answer to an inquiry by saying: "But of course the platforms had been removed." On cross-examination the plaintiff's counsel, referring to such visit to the premises, inquired: "You went over the day of the injury?" and the witness replied, "Yes, sir; a short time after the accident. Q. Where was the iron then?" An objection to this inquiry having been sustained, the witness was asked: "Did you see the iron any place? A. I did." After this reply was given the appellant's counsel objected to the inquiry, whereupon the court said:

"That is immaterial where it was after the accident.

"Q. You noticed this pile of tile that was there, didn't you?

"A. I did.

"Q. Do you know about what the width of the tile was?

"A. Do you mean each individual tile?

"Q. No, sir; the pile of tile.

"A. I understood it was piled a couple of feet to the curb line from where the tile was piled up.

"Q. It was not immediately against the curb?

"A. No, sir; it is demanded you leave a gutter space.

"Q. What was that gutter space?

"A. I could not say definitely. It was a small space between a foot and two feet, or something of that sort."

Plaintiff's counsel then observed:

"Now, your honor, I want to show that that iron could have been piled in there between that pile and these posts.

"The Court: What is the question?

"Plaintiff's Counsel: I want to ask if it was piled there.

"The Court: All right.

"Appellant's Counsel: I object.

"The Court: He may answer the question.

"Appellant's Counsel: I save an exception.

"Q. You saw the iron there that afternoon when you got there?

"A. After the accident?

"Q. Yes.

"A. Yes.

"Q. I want to ask you if it was not piled between the gutter and the tile?

"A. It was.

"Appellant's Counsel: If the court please, these questions all go in under the objection.

"The Court: Yes, sir. Save your exception.

"Q. Both pieces of iron had been moved, and it was piled between the tile and the upright posts on the edge of the sidewalk?

"A. It was piled in the gutter."

It is contended by appellant's counsel that in requiring this witness, over objection and exception, to testify that after the injury occurred the platforms were moved to another place, an error was committed. It is maintained by plaintiff's counsel, however, that, the

72 Or.—2

witness having testified on direct examination that the platforms had been removed after the accident happened, it was within the limits of proper cross-examination to require him to state where they had been temporarily placed, until they could be raised to their proper position and fastened to the outside of the building. The direct examination referred to was based upon a remark made by E. H. Bliss in response to the declaration of appellant's counsel, to state what were the conditions with respect to the delivery of the fire-escape platforms at the Failing building. After complying with that request the witness incidentally observed: "But of course the platforms had been removed." This comment was probably offered as an excuse for not making a more careful measurement of the situation existing soon after the injury. The remark of the witness was not in compliance with the request for a detailed statement of the conditions existing at the building at the time of the accident, and the observation was evidently not anticipated by appellant's counsel.

1. The statute permits an adverse party to cross-examine a witness as to any matter stated in his direct examination or connected therewith: Section 860, L. O. L. The extent or limit of the cross-examination of a witness, as a means of testing his memory, or of discovering his bias or prejudice, or of ascertaining the truth of his sworn declarations, is a matter resting largely in the court's discretion which will not be disturbed except in case of an abuse thereof: *Sayres* v. *Allen,* 25 Or. 211 (35 Pac. 254); *State* v. *Reinhart,* 26 Or. 466 (38 Pac. 822); *State* v. *Trapp,* 56 Or. 588 (109 Pac. 1094).

2. Any narration by a witness tending to explain, modify, discredit or disprove his testimony given in

chief may be demanded of him on cross-examination: *Ah Doon* v. *Smith,* 25 Or. 89 (34 Pac. 1093) ; *Maxwell* v. *Bolles,* 28 Or. 1 (41 Pac. 661) ; *Kenny* v. *Walker,* 29 Or. 41 (44 Pac. 501) ; *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917) ; *Lieuallen* v. *Mosgrove,* 37 Or. 446 (61 Pac. 1022).

3, 4. Where, however, the proposed cross-examination of a witness relates to collateral, irrelevant or immaterial matters, the privilege should be denied: 40 Cyc. 2493.

*"It is now settled by the great weight of authority as well as reason that evidence of subsequent repairs or precautions taken after the happening of the accident causing the injury,"* says a noted author, *"is not admissible to prove antecedent negligence"*: 6 Thomp. Com. Law of Neg., par. 7871.

To the same effect, see *Skottowe* v. *Oregon S. L. etc. Ry. Co.,* 22 Or. 430 (30 Pac. 222, 16 L. R. A. 593) ; *Ferrari* v. *Beaver Hill Coal Co.,* 54 Or. 210 (94 Pac. 181, 95 Pac. 498, 102 Pac. 175, 1016) ; *Marien* v. *M. J. Walsh & Co.,* 64 Or. 583 (131 Pac. 505). Where it appears that after an accident a change has been made in the instrumentality causing it, evidence of the alteration is inadmissible, unless it is offered to substantiate an issue that the agency causing the hurt could not have been operated in a changed condition: *Love* v. *Chambers Lumber Co.,* 64 Or. 129 (129 Pac. 492).

5. Though the remark of the witness Bliss was immaterial, the declaration of plaintiff's counsel that he desired to show that the platforms could have been placed in the gutter tends to disclose a purpose to prove prior negligence, thus seeking to impose upon the appellant a liability for knowledge gained by experience, and, this being so, an error was committed in requiring the witness to answer the question on

cross-examination relating to a change of place of storing the ironwork causing the injury.

6. Notwithstanding such error, a careful examination of the entire testimony given at the trial, and which is made a part of the bill of exceptions, induces the conclusion that we cannot affirmatively say there is no evidence to support the verdict, and under the procedure prescribed by Article VII of Section 3 of the Constitution of Oregon, and amended November 8, 1910, the misapprehension of the rule of law must be regarded as harmless.

7, 8. It is insisted that an error was committed in failing to submit to the jury, as requested, the question of the plaintiff's negligence in halting in the street to converse with an acquaintance when an opportunity was afforded him to observe the danger reasonably to have been apprehended from the falling of the platforms. The answer does not charge contributory negligence. It contains an averment as follows:

"That the plaintiff is of full age and with ordinary powers and faculties of observation, and assumed whatever risk arose from the placing of materials in the street and voluntarily exposed himself to the same."

A text-writer, illustrating the divergence of these defenses, says:

"The doctrine of the assumption of risk, as distinguished from contributory negligence—that is to say, from the failure of the person injured, or the custodian of such person, to exercise ordinary care to avoid the injury, is said not to apply in the case of persons not sustaining the relation of master and servant to each other, and not having contractual relations with each other, unless the person injured knows and appreciates the danger and voluntarily puts himself in the way of it": 1 Thomp. Com. Law Neg., par. 184.

The text thus quoted seems to have formed the basis of the clause of the answer referred to, except that it is not averred in this part of the defense that the plaintiff knew and appreciated the danger. But, however this may be, as no contractual relation existed at the time of the accident between the parties now before this court, the defense of assumption of risk was inapplicable, for such a plea can be invoked only in cases between master and servant: *Dubiver* v. *City Railway Co.,* 44 Or. 227 (74 Pac. 915, 75 Pac. 693, 1 Ann. Cas. 889). No error was committed in refusing to give the instruction requested.

9. It is contended that an error was committed in dismissing the action as to the defendant Olsen. In the brief of appellant's counsel it is said:

"No question can be made but that there was evidence before the jury upon which they might have found that the negligence causing the accident was attributable (a) to the defendant Olsen and the appellant concurrently, or (b) to the defendant Olsen alone. In the former case there would have been judgment against both parties, and appellant is defeated of its right of contribution from Olsen by the dismissal."

Judge Thompson in his great work, Commentaries on the Law of Negligence, paragraph 75, in discussing this subject, says:

"If the concurrent negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior concurrent negligence of the other contributed to the injury."

As this cause might originally have been maintained against either Olsen or the Portland Wire & Iron Works, so the plaintiff at any time prior to the giving of the judgment could lawfully dismiss the action as to either and proceed against the other: *Groot* v.

*Oregon Short Line R. Co.,* 34 Utah, 152, 164 (96 Pac. 1019, 1024). In that case it is said:

"The plaintiffs, therefore, could sue any one or more of the joint tort-feasors, if there were, in fact, more than one. The plaintiffs could likewise, at any time before judgment, have dismissed the action as to one, and have proceeded against the other alone. The court could also dismiss the action, with the consent of the plaintiffs, as to one tort-feasor, and we know of no reason why the other can complain. Where any other rule is invoked, it applies only after judgment. A plaintiff need not prosecute all joint tort-feasors; and, as a general rule, so long as he does not release or discharge any one without the consent of the other, neither can complain."

So, too, in *Equitable Life Assur. Society* v. *Lester* (Tex. Civ. App.), 110 S. W. 499, 501, it was ruled that in an action against joint tort-feasors, a dismissal as to one did not discharge nor affect the liability of the other. In deciding that case Mr. Chief Justice James, speaking for the court, says:

"The tort alleged was a joint one; and the discontinuance or dismissal as to Marks & Plummer, or an instructed verdict in their favor at plaintiff's instance and request, did not serve to discharge appellant or affect its liability."

10. The wrong complained of in the case at bar was not intentionally committed by either Olsen or the appellant, and in the absence of a purpose of that kind, the right of contribution exists between them: 9 Cyc. 805. A text-writer discussing the question of contribution and indemnity as between wrongdoers, says:

"An attempt has been made in some cases to lay down a general rule by which it may be determined in every case whether the party is or is not entitled to contribution. Thus in Ohio, the judicial conclusion

is that 'the common-sense rule and the legal rule are the same, namely, that when parties think they are doing a legal and proper act, contribution will be had, but when the parties are conscious of doing wrong, courts will not interfere.' This statement is a little inaccurate, in that it denies redress in the cases only in which parties are conscious of wrongdoing. There are many cases in which the absence of consciousness of wrong could not excuse a man either in law or morals. An English case states the rule more concisely as follows: 'The rule that the wrongdoers cannot have redress or contribution against each other is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act.' If he knew the act was illegal. or if the circumstances were such as to render ignorance of the illegality inexcusable, then he will be left by the law where his wrongful action has placed him'': Cooley, Torts (3 ed.), 258.

The appellant is therefore not remediless, and may maintain an action against Olsen for contribution. No error was committed in dismissing the action as to the latter, when the judgment of nonsuit was given with the plaintiff's consent and against the appellant's protest.

Believing that no prejudicial error was committed at the trial, the judgment is affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE RAMSEY concur.

Filed September 8, 1914.

DISSENTING OPINION.

(143 Pac. 922.)

Mr. Justice Burnett delivered the following dissenting opinion:

The opinion by Mr. Justice Moore in this case discusses the ruling of the Circuit Court admitting evidence of the change of the situation of the metal platforms after they had fallen upon the plaintiff's leg, and deduces the proper conclusion that this was error. The reasoning of the opinion and the precedents cited in its support are then relegated to desuetude by this statement:

"Notwithstanding such error, a careful examination of the entire testimony given at the trial, and which is made a part of the bill of exceptions, induces the conclusion that we cannot affirmatively say there is no evidence to support the verdict, and under the procedure prescribed by Article VII, Section 3 of the Constitution of Oregon, as amended November 8, 1910, the misapprehension of the rule of law must be regarded as harmless."

The hackneyed sentence of that section to which the opinion alludes is this:

"In actions at law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict": Article VII, Section 3 of the Constitution.

The appeal in this case does not call upon this court to re-examine any question of fact. The error complained of, and for which a reversal is sought, is one

of law committed by the trial court in receiving as evidence what the opinion, the authorities there cited, and many more not mentioned, unite in condemning as inadmissible. Of course, a reversal of the case because of this error of law would lead to a re-examination of the questions of fact involved; but the new investigation would not be otherwise than by a jury, which would keep the procedure strictly within the constitutional injunction.

The plain meaning of the quoted excerpt from the Constitution is that when, as the result of a regularly conducted trial by jury, a verdict is returned, it must be thereafter respected as a conclusive declaration of fact, with the sole qualification that, if the court can say that there is no evidence to support it, the decision of the jury may be disregarded. But what is trial by jury, and what is its product, the verdict, to which we are confined as an exponent of the facts? Mr. Justice GRAY in *Capital Traction Co.* v. *Hof,* 174 U. S. 1 (43 L. Ed. 873, 19 Sup. Ct. Rep. 580), says:

" 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American Constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence."

Mr. Justice McBRIDE thus states the principle under the amended form of our Constitution in *State* v. *Rader,* 62 Or. 37 (124 Pac. 195):

"But, for the jury to find the fact, the court must see that they receive only legal evidence, and no good finding of fact can ever be predicated upon illegal evidence."

Mr. Justice RAMSEY enunciates the doctrine in these words in *Sullivan* v. *Wakefield,* 65 Or. 528, 535 (133 Pac. 641, 643):

"A verdict, to be protected from re-examination, under the section of the Constitution cited, must be one rendered in a court having jurisdiction of the parties and of the subject matter, on a trial where there were no reversible errors of law committed by the court, and where there was some legal evidence to support the verdict."

Again, Mr. Justice MOORE, in *Buchanan* v. *Lewis A. Hicks Co.,* 66 Or. 503, 511 (134 Pac. 1191, 1192), says:

"It will thus be seen that the right, upon appeal, to correct a judgment, rests upon an error of law committed by the trial court, and not upon the re-examination of any fact tried by a jury, except in cases where the Supreme Court can affirmatively say there is no evidence to support the verdict."

In that opinion, also, Mr. Justice MOORE, in common with Mr. Justice RAMSEY in *Sullivan* v. *Wakefield,* 65 Or. 528 (133 Pac. 641), quotes with approval this language from *Forrest* v. *Portland Ry., L. & P. Co.,* 64 Or. 246 (129 Pac. 1051):

"An invulnerable verdict must be a conclusion of a fact by a jury regularly impaneled, as the result of a trial in which the rights of all parties in respect to the admission or exclusion of testimony have been observed in all material particulars under proper instructions of the court as to the law."

It is essential to a jury trial that the judge rule correctly on the law as it is that the jury hear the testimony. By so much as either ingredient is want-

ing, by so much does the proceeding come short of a
constitutional trial by jury.  In this case the rights
of the appealing defendant were abused in a matter of
law by the error of the court in allowing a witness to
testify that after the accident the platforms were
found piled in the gutter.  The record discloses that
plaintiff's counsel said at the time:

"I want to show that that iron could have been piled
in there between that pile and those posts."  .

His manifest purpose, in face of the authorities
quoted to the contrary, was to show by the subsequent
placing of them in the gutter that it was negligence to
put them where they were at first.  To correct this
prejudicial error, as we should, is not to re-examine
the facts.  It is only to consider a question of law on
which the trial court was mistaken.  We have already
done this in similar cases, and sent them back for new
trial on account of such infractions of the rules of evi-
dence, even since the amendment of the organic law.
In *State* v. *Hill,* 63 Or. 451 (128 Pac. 444), this court,
speaking by Mr. Justice McBRIDE, declined to disturb
the verdict directly, because there was some evidence
in its favor, but reversed the case on account of errors
in law occurring at the trial.  Again, in *Tonseth* v.
*Portland Ry., L. & P. Co.,* 70 Or. 341 (141 Pac. 868),
although there was ample evidence to sustain the
verdict, the judgment was reversed, Mr. Justice MOORE
writing the opinion, for the reason, among others, that
the court had permitted the defendant to cross-examine
the plaintiff on a written statement signed by him
without first showing him the writing.  As it was a
declaration against his own interest by a party to the
action, it might have been proven against him as part
of the defendant's case, without calling the plaintiff's
attention to it.  Notwithstanding his prompt admis-

sion that he had signed the document, however, and without any showing that he had been surprised or misled, this court, treating him as a mere witness, held it was prejudicial error to ask him about the statement without first exhibiting it to him, and so reversed the case. If such an error in the manner of confronting a party with his own deliberate written statement was sufficient to reverse the judgment against Tonseth in an action which he commenced, the similar, though more flagrant, error here in question, by like reasoning, ought to work a reversal of the judgment against the appealing defendant in an action forced upon it.

The error complained of was material and prejudicial. It does not appear in testimony by whom or by whose order the platforms were piled in the gutter after the plaintiff was hurt; but the court permitted him to show the subsequent act, whose author was not disclosed, all for the purpose of fastening the charge of negligence upon the defendant. In view of the language of plaintiff's counsel when he insisted in putting in the testimony in question, the jury quite probably concluded, as the attorney intended they should, that the change made in the situation of the platforms after the accident was a confession of negligence on the defendant's part in depositing them in the position from which they fell in the first place.

It is true the amended Constitution empowers this court to affirm a judgment, notwithstanding any error committed during the trial, if, after consideration of all the testimony, the charge of the court, and any other matter material to the decision, which may be annexed to the bill of exceptions, we are of the opinion that the judgment was one that ought to have been rendered. This, however, is only a declaration in constitutional form of the law as it has existed in this state

ever since the act of October 20, 1864, as embodied in Section 556, L. O. L.:

"Upon an appeal from a judgment, the same shall only be reviewed as to questions of law appearing upon the transcript, and shall only be reversed or modified for errors substantially affecting the rights of the appellant. * * "

The value of precedents established under that statute is not destroyed by the constitutional amendment, especially when in its own terms it declares that:

"The courts, jurisdiction and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law."

Writing the opinion in *Aldrich* v. *Columbia Ry. Co.,* 39 Or. 263 (64 Pac. 455), Mr. Justice MOORE used this language:

"It is contended by defendant's counsel that an error was committed by the court in the admission of this testimony; but plaintiff's counsel maintain that, if the testimony was immaterial, the defendant was not injured thereby, unless it was prejudicial, and, not having specified that the testimony was prejudicial, any error committed in this respect is not subject to review. We think otherwise, however; for the rule is well settled in this state that while error will not be presumed, yet when it appears from the transcript there is no presumption that it was rendered harmless or obviated during the trial, while the record is silent."

The following precedents are there cited: *Dubois* v. *Perkins,* 21 Or. 189 (27 Pac. 1044); *Nickum* v. *Gaston,* 24 Or. 380 (33 Pac. 671, 35 Pac. 31); *Cleveland Oil Co.* v. *Norwich Ins. Co.,* 34 Or. 228 (55 Pac. 435); *Carney* v. *Duniway,* 35 Or. 131 (57 Pac. 192, 58 Pac. 105).

Mr. Justice MOORE more succinctly states the rule thus in *Carter* v. *Wakeman,* 45 Or. 427, 430 (78 Pac. 362, 363):

"When it is manifest that an error has been committed, prejudice will be presumed, unless it affirmatively appears from an inspection of the record that no prejudice could have resulted therefrom."

See, also, *Durkee* v. *Carr*, 38 Or. 189 (63 Pac. 117), and *State* v. *Goodager*, 56 Or. 198 (106 Pac. 638, 108 Pac. 185).

The reason of the precedents above cited was sound when they were established, and they are equally potent under the present Constitution, which only reiterates a long-standing statutory rule. Of course, many situations occur where error is harmless, as, for instance, where the fact sought to be proven by the objectionable testimony is either admitted by the adverse party, or is otherwise shown by conclusive evidence, or the challenged testimony is withdrawn from the jury and the like. Such, however, is not the condition here. The portion of the opinion quoted at the outset amounts to saying that a little leaven of legal testimony in a case will leaven the whole lump of whatever error is injected into the record by overzealous counsel, or inadvertently permitted by an overworked judge, in the hurry of the trial. The fallacy of the majority utterance on this point consists in confounding a possible error of fact made by the jury with an error of law committed by the court. It is only when we are called upon to re-examine a question of fact on appeal in an action at law that we are restricted by the clause of the Constitution to which the opinion of Mr. Justice MOORE alludes. It has no reference to questions of law. The mere presence of some legitimate testimony in the record, however, is not the touchstone by which to determine whether the rights of a litigant have been protected by the rulings of the court in matters of law. If it were, any declaration

of fact by a jury, however obtained, would be immune from attack on appeal, almost without exception, for it is rare that a case is utterly devoid of any testimony in favor of the prevailing party, though his record may be full of the most unjust and egregious errors.

While we are confined in our review of the facts to instances where there is no evidence to justify the verdict, we are nevertheless in duty bound, as much as ever, to uphold the rules of law as established aforetime by statute and precedent.    To do otherwise is to invite uncertainty and confusion, to promote litigation, and to unsettle the foundations of the law.

For these reasons, I dissent from the conclusion of my judicial Brethren.