COMMONWEALTH *vs.* JOHN R. ALLEN.

Middlesex.    March 9, May 25, 1926. — June 28, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Witness*, Impeachment, Cross-examination. *Practice, Criminal*, Exceptions, Requests for instructions, Common Law Rule 44 of the Superior Court (1923), Question by jury. *Evidence*, Absence of evidence. *Rules of Court*.

At the trial of an indictment where the identity of the alleged criminal was in question, a witness called by the Commonwealth and examined in direct and cross-examination testified that at one time he had identified another man as the alleged perpetrator of the crime. He was not asked to identify the defendant. The defendant was so identified by two other witnesses. The defendant then called the first witness and through questions to him sought to introduce in evidence the substance of a conversation between the witness and the defendant's counsel to show that the witnesses who had identified the defendant had tried to convince the first witness of their view and that there was ill feeling among the three. The witness seeming to deny the implication in the questions by defendant's counsel regarding what counsel had said at this interview, the counsel began to put leading questions and in effect to attempt to get before the jury, in the guise of questions, alleged statements of the witness. The judge refused to permit the cross-examination. It did not appear that any offer was made of the substance of the alleged statements. *Held*, that the judge's ruling was within his discretionary power and that no abuse of his discretion was shown nor any violation of G. L. c. 233, § 23.

It is proper for a judge presiding at the trial of an indictment to refuse to grant requests for rulings not presented to him in accordance with requirements of Common Law Rule 44 of the Superior Court (1923).

It is proper for a judge presiding at the trial of an indictment to refuse to
answer a question submitted to him by the jury during their delibera-
tions when the court stenographer who took the testimony was absent,
if an answer would involve the finding of a fact by the judge.

INDICTMENT, found and returned on May 19, 1925, charg-
ing that "John Doe, Richard Roe, John Roe and Richard
Doe, whose other and true names and more particular de-
scriptions of whom are to said Jurors unknown, and Lester
R. Fogg, otherwise called Joe Allen, otherwise called Lester
Franklin" on May 14, 1925, "being armed with a dangerous
weapon," assaulted Harold Coneeny with intent if resisted
to kill.or maim him and did steal from his person $23,164.

On September 9, 1925, there was allowed a motion by the
Commonwealth that, the "true name of John Doe having
been discovered to be John R. Allen, that name John R.
Allen be used in all subsequent proceedings."

The defendant John R. Allen alone was put upon trial
on September 22, 1922, before *Flynn*, J.

It appeared that on May 14, 1925, an automobile operated
by one Hoban, who was accompanied by one Pompay, carried
inside of the car one Coneeny and one Hullett, in charge of
the payroll of the Lever Brothers factory in Cambridge.
Hoban and Pompay testified that when the pay car drove
up to Lever Brothers factory it parked near the curbing,
directly opposite the door through which the messenger was
to carry the money.   About fifteen feet from them they both
observed a young man standing, whom they testified was
the defendant John R. Allen.   They testified that Allen
was standing on the sidewalk, near the door leading into the
Lever Brothers factory.   Coneeny testified that when the
car drove up to the Lever Brothers plant he was inside of
the tonneau and when he came out he paid no attention to
the man whom Hoban and Pompay saw standing there;
that he passed by without looking at him; that some one
followed him into the areaway inside the front door; that
then he felt a gun at his back and was ordered to turn about,
throw up his hands and surrender the box to a man standing
there pointing a revolver at him.   Coneeny testified that he
was somewhat excited but that he was sure the defendant

Allen was not the man who held him up. Hoban and Pompay testified that they could not see what happened to Coneeny after Allen followed him into the hallway. Hoban testified that after Allen had gone inside, another messenger named Hullett, carrying a box containing $6,664, was held up directly in front of the bank car and that they observed several other men, also armed, on the street. One of the bandits took the box with the $6,664 from Hullett and jumped into an automobile, while Pompay and Hoban were also being held up at the point of a gun.

The defence was an alibi.

Material exceptions saved by the defendant and testimony and proceedings relating thereto are described in the opinion.

*W. R. Scharton*, for the defendant.

*S. H. Lewis*, Assistant District Attorney, for the Commonwealth.

WAIT, J. There is no merit in the defendant's contentions.

The refusal of the trial judge to permit the question to the witness Coneeny was within his discretion, and no abuse of discretion is shown. On direct and cross-examination of Coneeny, when called as a witness for the prosecution, his testimony justified a finding that on a previous occasion he had identified one Lester Fogg as his assailant and had declared that he could not forget the man's face; that Fogg was not as big a man as the defendant, Allen, "shorter and stouter and slighter"; that, at an earlier time, he had been shown a photograph of Allen, and had declared that it was not the man who attacked him. Coneeny was not asked whether he recognized the prisoner at the bar as his assailant. Such identification of the defendant with Coneeny's assailant as the bill of exceptions discloses came from the witnesses Hoban and Pompay. Later in the trial, Coneeny was called as a witness for the defendant, apparently for the purpose of showing that Hoban and Pompay had tried to convince him that the defendant was the assailant, and that there was ill feeling between the witnesses. He denied that he had talked with Hoban and Pompay in regard to the identification of Allen, that they had said and he had denied that Allen was

the man; and, therefore, counsel calling attention to a talk that day between himself and the witness, asked if the witness had not said certain things. The colloquy of trial judge, counsel and witness which followed conveys but little information to us. Apparently the witness sought to deny the implication of counsel's questions in regard to what counsel had said at this interview. Counsel began to put leading questions. The district attorney objected as the witness had not appeared hostile, and the judge refused to permit cross-examination. What he did, in actual effect, was to prevent the defendant's counsel from testifying and getting before the jury, in the guise of questions, alleged statements of the witness. In the state of the trial the judge's ruling was sound. It did not contravene G. L. c. 233, § 23.

The bill of exceptions does not indicate that any offer was made of testimony of the alleged statements. The defendant did not lose any right to prove prior contradictory statements of his witness. Whether there was surprise was for the judge to determine.

The requests that the judge instruct in regard to the alibi testimony and the inference from absence of sudden wealth, made after the charge, came too late. It is apparent that the judge declined to accept the request at that time. In this he was justified. Common Law Rule 44 of the Superior Court (1923). The charge amply covered the case. *Robertson* v. *Boston & Northern Street Railway*, 190 Mass. 108, does not apply to the facts before us. See also *Brick* v. *Bosworth*, 162 Mass. 334. As matter of law the requests did not state the law accurately, but this we need not discuss.

The refusal by the judge to answer the jury's question, whether Coneeny ever contradicted "his former statement as to the identification of Allen as the man who held him up," was proper. It involved a finding of fact which was for the jury. The statement desired by the defendant could not be given. In the absence of the stenographer the testimony could not be read to the jurors, and the judge was right in replying that they must depend upon their memories of what had been testified.

*Exceptions overruled.*