WILLARD, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 14—February 7, 1928.*

*Rape: Evidence: Relevancy: That complaining witness had inter-course with one other than defendant: Jury: Instruction that jurors attempt to reach verdict: Reading testimony to jury: Discretion of court.*

1. In a prosecution for statutory rape, proof sufficient to support a finding that the girl had had intercourse with some one else would not relieve defendant of responsibility for his criminal act if he was in fact guilty of the offense charged.  p. 173.
2. A statement of the trial court to the jury, after they had been out for some time, that it was the duty of the jurors to agree upon a verdict if they could do so, is *held* not to constitute error, in view of the specific statement by the court that the jurors should not surrender their deliberate honest judgment based on the evidence.  p. 173.
3. A trial court may properly caution jurors against stubbornly refusing to listen to their fellow jurors and ask them to give consideration to the views expressed by other members of the jury.  p. 173.
4. The trial court properly instructed the jury that an unsuccessful attempt, several years prior to the trial, by another person to compel the girl to submit to intercourse was not a very material point in the case, and that the important question was whether defendant had intercourse with her on the date charged.  p. 174.
5. The jury have a right to have testimony read to them by the reporter, and the trial court is vested with a large discretion as to just how much of the evidence should be read.  It is the duty of counsel, if important portions of the proof are omitted, to call such fact to the attention of the court out of the hearing of the jury.  p. 174.

ERROR to review a judgment of the circuit court for Grant county: S. E. SMALLEY, Circuit Judge. *Affirmed.*

*Ernest Willard* brings error to reverse a judgment entered March 1, 1927, finding him guilty of statutory rape.

Defendant was arrested August 17, 1926, charged with having committed the crime on August 16, 1926, upon a

girl who was then seventeen years of age, who had lived in his family and had been in his care and custody since she was seven years of age.

For the plaintiff in error there was a brief by *Walker & Christenson* of Lancaster, and oral argument by *Otto F. Christenson.*

For the defendant in error there was a brief by *R. M. Orchard,* district attorney of Grant county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Orchard* and *Mr. Messerschmidt.*

STEVENS, J. (1) The case presents the question whether the proof is sufficient to sustain the conviction.

If this girl is a credible witness, her testimony not only justifies the conviction, but compels the conclusion that justice to the defendant and to society requires the affirmance of this judgment. The story of the frequent acts of intercourse between this middle-aged married man and this young girl from the time she was thirteen years of age is so unusual that the court approached its consideration of the case in the attitude of making a critical examination of the evidence that supports the conviction. The story told by this girl does not present so improbable a situation as to warrant the court in wholly discarding her testimony. But it does present a situation where the court has required that the testimony of the girl be corroborated by other witnesses.

This corroboration is found in the testimony of the defendant and of his wife, whose testimony establishes the fact that the defendant had abundant opportunity for intercourse with the girl. Their testimony establishes the farther fact that, with a single exception, these foster-parents never permitted this girl to be in the company of other boys and girls at dances or evening gatherings unless either one or both of them were present. More significant still, their testimony shows that on the occasion of this single exception,

the defendant was so angry because the girl had been in the company of boys that his wife had to restrain him from inflicting corporal punishment upon the girl.  If the defendant was in fact innocent, we cannot escape the conclusion that the defendant was the last person in the world to whom the girl would have disclosed her condition, knowing as she did the anger of her foster-father and his threats of physical punishment shortly before that because of the fact that she had been out in the company of other girls and boys during that single evening.  On the other hand, if the defendant was responsible for her condition, we can readily understand why she told him of her condition, rather than her foster-mother, who would be the one to whom a young girl would naturally confide such a fact.

When the girl disclosed her condition to him, if defendant were innocent, we would expect, because of his former conduct, that he would at least display some such anger as was shown on that former occasion.  But neither the defendant nor his wife offered a single word of testimony to show that the defendant displayed any anger, made any threat of punishment, or even resented the charge made that he was the father of this unborn child.  Instead, so far as the record discloses, the defendant did not even express his disapproval of the conduct that had put the girl in this unfortunate condition.  He did nothing, so far as the record discloses, except to see a doctor and to plan an abortion in order that the girl's condition might be kept from the public. Actions often speak louder than words.

All who have participated in the trial of cases know how important it is to see and observe the witnesses upon the stand in order to determine their credibility.  The jury had that advantage over this court, which must pass upon this question by an examination of the colorless typewritten page, which is the skeleton from which the flesh and blood of the living witnesses have been removed.  The jurors could better judge of the credibility of this unfortunate

girl. They could better determine whether the extreme zeal of the defendant to segregate this girl from all other male companionship was prompted by the instinct of a father to protect his foster-daughter, or by the jealousy of a man who desired to keep the girl for himself alone.

Appellant lays much stress upon the fact that the girl's testimony is contradictory as to whether she was alone with a certain boy on the night referred to above when she was out in the company of some other girls and boys. This was offered and received wholly upon the question of the credibility of the girl as a witness. The jury saw her on the witness stand and had a better opportunity to judge of her credibility than this court has. So far as the guilt or innocence of the defendant is concerned it is in no way affected by what may have taken place that night. Even if there were proof to support a finding that she had intercourse with any one on that occasion, that would not relieve the defendant of responsibility for his criminal act, if he was in fact guilty of the offense charged to have been committed by him on the 16th day of August, 1926.

(2) Appellant complains because the trial court stated to the jury, after they had been out for some time, that it was the duty of the jurors to agree upon a verdict, if they could do so. When all that was said by the learned trial judge at this time is considered together, we are satisfied that the trial court was well within its proper sphere in the instructions which it then gave to the jury. The court specifically told the jurors that they should not surrender their deliberate honest judgment based on the evidence and that they must render a verdict which justly answers the consciences of the individuals making up the jury. A trial court may very properly caution jurors against stubbornly refusing to listen to their fellow jurors and ask them to give consideration to the views expressed by other members of the jury. "It is not infrequent that jurors fail to fully realize their high duty to reason with each other, to compare opinions, and to each

be considerate of the views of his fellows, leading to undue hesitation in reaching a verdict or failure to reach one at all.    Wise judicial supervision of a trial, in that regard, is necessary and is none too often exercised.    Manifestly, the court should be mindful of where that duty ends and the duty of the jury begins so that an attempt to discharge the former will not invade the latter.    The trial judge in his legitimate field has very broad discretion, and it needs a pretty plain case of prejudicial overstepping of it to warrant condemning the result as tainted with harmful error." *Spick v. State,* 140 Wis. 104, 127, 121 N. W. 664, 673.    See, also, *Odette v. State,* 90 Wis. 258, 263, 62 N. W. 1054; *Johnson v. State,* 91 Wis. 253, 267, 64 N. W. 838; *Secor v. State,* 118 Wis. 621, 637, 638, 95 N. W. 942.

(3) The court properly instructed the jury that an incident occurring several years previous to the trial, when a boy unsuccessfully attempted to compel this girl to submit to intercourse, was not a very material point in the case, and that the important question was whether the defendant did have intercourse on the date here in question.    The trial court properly had the portion of the testimony which detailed this incident read to the jury.    The jury have a right to have testimony read to them by the reporter.    The trial court is vested with a large discretion as to just how much of the evidence should be read.    If important portions of the proof are omitted, it is the duty of counsel to call that fact to the attention of the court, out of the hearing of the jury, so that the court can determine whether farther testimony is required to be read by the request made by the jury.

A careful study of the entire record leaves no reasonable doubt as to the guilt of the defendant and satisfies the deliberate judgment of the court that justice has been done.

*By the Court.*—Judgment affirmed.