Argued October 17; affirmed December 3; rehearing denied December 31, 1929

STATE *v.* LUKE JENNINGS

(282 Pac. 560)

For appellant there was a brief and oral argument by *Mr. T. J. Enright.*

For respondent there was a brief and oral argument by *Mr. George Codding,* District Attorney.

ROSSMAN, J. ■ The defendant was indicted under the provisions of Session Laws 1923, ch. 30, § 2, p. 41, charged with the crime of unlawfully possessing mash fit for the manufacture of intoxicating liquors. Upon the trial he was found guilty, and from the resulting judgment appeals. Although the record discloses only six assignments of error, based upon rulings of the circuit court, the brief of appellant argues 19 alleged errors. It is axiomatic under our practice that if a party desires to present a question for this court's review he must first present his objection to the circuit

court and obtain a ruling. If the latter is adverse he may obtain a review in this court. We shall, therefore, ignore all assignments of error which were not preceded by a ruling of the circuit court.

■ The defendant contends that the circuit court improperly limited the defendant's cross-examination of the state's witnesses, Ralph Jennings and Louis Jennings, who were respectively the sheriff and deputy sheriff of Jackson county, as to their knowledge of the mash found in the defendant's possession, "their technical knowledge of mash in general," and "their knowledge of mash fit for distillation." We have searched the transcript of evidence with care, but have found practically nothing which warrants this assertion. Only two objections were made during the course of the cross-examination of Louis Jennings and only one of these was sustained. The question to which the objection was sustained did not concern mash, but inquired concerning a search warrant. When Ralph Jennings was being cross-examined the state offered only one objection; defendant's question was whether intoxicating liquor could be produced from mash containing salt. In sustaining the objection the court pointed out that there was no evidence at that time that this mash contained any salt and added "if there should be any evidence come in later to warrant it, that will be another matter." When the court thus ruled the defendant did not advance the contention which he suggests to us; that is, that he was endeavoring to show that the witness was incompetent to have given the expert testimony, which had already been received from him concerning mash and the distillation of intoxicating liquors. It appears to us that the cross-examination to which the objection was sustained had

thus entered the field where its extent was within the discretion of the trial judge; his ruling discloses no error: *State v. Trapp,* 56 Or. 588 (109 P. 1094); *State v. McGrath,* 35 Or. 109 (57 P. 321). We conclude that this assignment of error is without merit.

It is contended that the indictment fails to charge a crime. It recites "Luke Jennings is accused * * * by this indictment of the crime of unlawfully possessing mash committed as follows: the said Luke Jennings on the 8th day of March, A. D., 1929, in the said county of Jackson and state of Oregon, did then and there unlawfully and feloniously possess and have in his possession, within said county and state, certain mash which was then and there fit for distillation and for the manufacture of spiritous * * * liquor, the said Luke Jennings not * * *."

Session Laws 1923, ch. 30, § 2, provides thus:

"No mash, wort or wash, fit for distillation or for the manufacture of spirituous, malt, fermented, alcoholic or other intoxicating liquors, shall be made, fermented or possessed within this state by any person who does not at the time hold a permit issued under the laws and regulations of the United States * * *. The burden of proof shall be upon the defendant in any prosecution under this act to show the possession of such a permit."

Session Laws 1923, ch. 30, § 9, provides thus:

"Any mash, wort, wash or distillery found in any house or on any premises or within any inclosure shall in the case of the mash, wort or wash be deemed prima facie to have been made and fermented by, * * * the person who is in possession of such house, premises or inclosure."

It is the contention of the defendant that since the charging part of the pleading designates the crime

as "unlawful possession of mash" a crime is not charged, and that the later, or descriptive part, of the indictment can not be resorted to for aid. The rules for the construction of indictments, however, contemplate that the meaning is to be determined from the whole instrument and not from any part alone: *State v. Christy,* decided by this court November 19, 1929; *Dunbar v. U. S.,* 156 U. S. 185 (15 S. Ct. 325, 39 L. Ed. 390); *Smith v. U. S.,* 157 Fed. 721 (85 C. C. A. 353); *Ex Parte Pappas,* 57 Cal. App. 438 (207 P. 485); *Allen v. Commonwealth,* 178 Ky. 250 (198 S. W. 896); *Commonwealth v. Drewry,* 126 Ky. 183 (103 S. W. 266); *State v. Cooper,* (Mo.) 259 S. W. 434; *State v. Stock,* 169 Minn. 364 (211 N. W. 319). It follows that the indictment was sufficient to charge a crime.

■■■ It is next claimed that the evidence was insufficient to prove that the mash found in the defendant's possession was fit for the manufacture of "spirituous * * * or other intoxicating liquors"; these words mean mash intended for the prohibited uses as distinguished from mash merely adapted to or capable of being used for such purposes: *Pack v. State,* 116 Or. 416 (241 P. 390); *Milliner v. State,* 154 Ark. 608 (243 S. W. 861); Blakemore on Prohibition (3d ed.), § 224. A brief review of the evidence seems desirable. The defendant was living upon a tract of land in Jackson county; approximately 150 feet from his home was an outhouse, 9 x 10 feet in size, which was described as looking like a smoke-house, but which the defendant kept padlocked. All crevices in its outer walls were carefully filled with cloth and paper to such an extent that a witness described it "as nearly air tight as possible." At the time of his arrest three 50-gallon barrels, which contained a substance referred to by all of the wit-

nesses as "mash," stood in a corner of this building, boarded off like a bin. There is but little dispute as to the ingredients of this mash; the defendant testified that it consisted of corn, water, "and a little salt"; the state conceded the first two elements, but disputed the third. The only other controversy as to the ingredients of the mash concerns the quantity of water; the state's witnesses testified that at least two-thirds, if not three-fourths, consisted of water, while the defendant contends that the water was less in quantity but was unwilling to estimate its amount. These barrels, as we have previously stated, stood in the bin-like enclosure and were covered with a sheet of canvas. In the same enclosure and covered with the same sheet were two lanterns which were burning. The defendant testified that the mash was about six or seven days old and conceded that on its top was a foam, but added, "it wasn't working a great deal as I noticed." The state's witnesses testified that the mash was fermenting; one stated "it was working real heavy." Testimony was received that the state of fermentation had progressed to such an extent that the odors were plainly noticeable as one came into the vicinity of the building. In the same structure was found a bag containing many corks, a can containing a quantity of cotton and charcoal, a five-gallon can, two kerosene stoves and a box containing many one-gallon glass jugs. Louis Jennings testified that at the time of the arrest the defendant stated that he had expected to rent a still and accounted for his engagement in this venture by saying "that times were hard" and that he had to have "a little extra money." The sheriff of Jackson county and his deputy testified that cotton and charcoal is used for filtering liquor after its first run, that this mash was fit for distillation for the manufacture

of intoxicating liquor, and that the heat, produced by the burning lanterns, would hasten the fermentation of the mash. The defendant contends that the reception of these opinions was error; before they were received these two officers had testified that they had held their respective offices for more than four years, that they had "been in a number of liquor raids and had a good deal to do with stills." Whether a witness is possessed of special qualifications upon the subject-matter of inquiry, which will tend to give value to his opinion, is a matter which rests largely in the discretion of the trial court: *Portland, etc., R. Co. v. Sanders,* 86 Or. 62 (167 P. 564); *Rugenstein v. Ottenheim,* 70 Or. 600 (140 P. 747); *Farmers' etc. Nat. Bank v. Woodell,* 38 Or. 294 (61 P. 837, 65 P. 520). It is a matter of common observation that any alert police officer, who has participated "in a number of liquor raids and had a good deal to do with stills," has become possessed of a fund of knowledge concerning mash, stills and methods of distillation more extensive than that possessed by the ordinary layman. In fact, the public officer, charged with the enforcement of the prohibition statutes, is almost the only individual competent to testify upon such subjects unless resort is had to the illicit distiller of alcoholic beverages. We are of the opinion that when the court overruled the defendant's objections it committed no error. We assume that it is unnecessary to cite authorities in support of our conclusion that the above evidence supported a finding that the mash was fit for the manufacture of intoxicating liquor.

■■ It is next contended that the circuit court erred when it instructed the jury concerning the necessity of a federal permit to justify the possession of

mash fit for the distillation of intoxicating liquors. The defendant does not contend that the statement of the rule was erroneous, but argues that since the defense did not claim the possession of a license the instruction was abstract, like the situation commented upon in *State v. Wright,* 122 Or. 379 (257 P. 699, 259 P. 298), and prejudicial. The defendant apparently asked for no instruction upon this feature of the case; he never conceded that he possessed no permit and we find nothing in the record which was intended to withdraw from consideration the issues arising out of the provisions of our statute concerning permits. Since the argument of counsel to the jury is not before us, we do not know whether they commented upon the effect of the absence of testimony concerning a license. It will be observed from the excerpts of our statutes previously quoted that the defendant's possession of mash was not unlawful if a license had been issued to him and that unlike the other features of the case the burden rested upon him to prove possession of a permit. The judge of the court below, who had heard the various contentions advanced by the two sides during the course of the trial, was in a better position than we are to determine whether the jury would be benefited by a statement of the law concerning a federal license. The court has the power to instruct the jury on all questions growing out of the facts of the cause without a request from either party. This seems to be clear from our statute: § 139, O. L. See also 14 R. C. L., Instructions, § 2. Mr. Randall, in defining what principles of law should be stated to the jury in the course of the instructions, thus expresses the governing rules:

"In the performance of this duty the court should instruct as to just what the jury is to decide giving the

law applicable to the case and calling their attention to whatever is necessary and proper to guide them to a right decision. Such duty requires the court to tell the jury what facts are admitted of record, and to instruct on all the material issues presented by the pleadings and the evidence, and upon every point pertinent to the issues so raised. The jury should not be left to determine the issues for themselves, but should be clearly and concisely told what material facts must be found to authorize or bar a recovery, and if there is no evidence to support a particular count of a declaration the jury should be instructed to disregard such count. The court should submit all issues of fact raised by the pleadings and evidence, and not merely such as are supported by a preponderance of the evidence, and the jury should be instructed on the precise issues of fact in the case, whether the verdict is to be special or general, * * *. Facts or principles of law which have an important bearing on the case should be brought to the notice of the jury, although the arguments of counsel have failed to cover them, * * *. The trial judge should be careful, not only to state all appropriate rules of law, but to point out their relevancy with sufficient explicitness to enable the jury intelligently to apply the law to the facts. * * *

"In a criminal case the trial judge must state the contentions of both the state and the defendant, and charge on all the issues made by the testimony, whether the same are raised by the testimony of the accused or some other witness"; Randall's Instruction to Juries, § 118.

We are of the opinion that this exception discloses no error.

■ Another exception, somewhat analogous to the preceding one, contends that the court erred when it read to the jury § 9 of ch. 30, Session Laws 1923, which we have previously quoted, and explained to the jury the effect thereof. Possibly the defendant's admission that he was the owner of the mash and had prepared it

six or seven days previously, lessened the need for instruction on this element of the case, yet these words were spoken in pointing out to the jury the issues of fact and find their justification in the circumstance that the defendant's brief plea of not guilty failed to limit the issues to the narrow scope presented by the defendant's frank admission of possession. It follows from our conclusions expressed upon the preceding assignment of error that the court did not err when it gave this instruction.

■ It is next contended that the court erred when it instructed upon the effect of a former conviction of a crime; the record indicates that the defendant had been twice previously convicted; once for the manufacture of intoxicating liquor, and the other time for some infraction of the statutes regulating the operation of motor vehicles. He apparently presented no requested instruction upon this subject, but the court charged the jury ''this evidence of convictions of former crimes is competent to be shown to enable the jury to properly weigh the evidence of the person who has been shown to have been so convicted. In other words it is one of the tests of credibility of the evidence of the party of the witness. It is not the only test. * * * Before bringing the entire charge to a close the judge inquired ''has counsel any suggestions to make,'' and the attorney for defendant replied: ''In the instruction with reference to the former conviction being taken into consideration as to the credibility of the witness I don't believe you instructed them that the former conviction did not tend to prove the defendant guilty of this crime.'' Thereupon the court instructed the jury thus:

''There are various manners of impeaching the credibility of a witness. One is that he has made con-

tradictory statements at other times. Another method is that he has been convicted of a crime. That is one method of impeaching his credibility and that is as far as evidence of that character goes. That is what this evidence was introduced for—bearing on the credibility of the witness, and, therefore, when the defendant becomes a witness in his own behalf his testimony is to be tested by the same test and rules as any other witness, and, therefore, he may be impeached by showing that he has been previously convicted of a crime and that goes to his credibility the same as to the credibility of any witness who is not a defendant in the case or not a party to it, so it will be considered only for that purpose, of course.''

The defendant made no further suggestions but excepted on the theory that the court had failed ''to instruct the jury that the former conviction of the defendant does not tend to prove, nor can it be considered as evidence of the guilt of the defendant of this particular crime.''

We assume that the thought which was present in the mind of the defendant's attorney, and which he desired conveyed to the jury, was that our law does not deem it proper for the jury to infer from the fact that the defendant at some other time exhibited a depravity that enabled him to commit a crime renders it likely that he committed this one also. Where evidence is of such a character that it is capable of serving two or more objectives, but the law due to considerations of public policy denies itself the use of such evidence except for a limited purpose, the court may, and upon request should, confine the jury's application of the evidence to the purpose for which it is competent: *Dorn v. Clarke-Woodward Drug Co.*, 65 Or. 516 (133 P. 351); Randall's Instructions to Juries, § 293. The court twice pointed out to the jury the sole

use which it was authorized to make of this evidence and added "so it will be considered only for that purpose." The instruction, it is true, contains no dissertation upon the reasons which have persuaded the law to limit the application of evidence of previous convictions to the discredit of the defendant-witness, but it effectually enjoined the use of this evidence to the single objective which the court clearly defined. Since, the defendant presented no written requested instruction and waited until the entire charge had been given before he voiced his oral request, we believe that the instruction given is not subject to the criticism now suggested.

■ There remains for disposition only two exceptions; since both involve the same principle of law we shall consider them together. The one assigns as error the following statement made by the court in the course of its instructions, "* * * and the state has also introduced in evidence or rather developed on cross-examination certain evidence by one of the state's witnesses, in which he testified that he had had a test made of the fluid contained in one of the exhibits containing fluid and that it tested a certain percentage of alcohol. * * * You are to find the truth or falsity of the facts testified to by the state's witnesses. * * *" The exception challenges this instruction "for the reason that there was no evidence of the same in the record and said instruction was, therefore, prejudicial."

The other exception is predicated upon what occurred when the jury returned to the court room and announced "we would like to have read to us the testimony of Louis Jennings, both Jennings, as to when and where they tested the mash and how they tested

it to determine whether or not it was fit for distillation purposes." The record shows that the court replied:

"It is going to be a little difficult, gentlemen, to segregate out the portions of the testimony to be read. There was evidence introduced by the state by the witness Sheriff Jennings for the purpose of showing that he tested the liquid at the time with a hydrometer, but that didn't show the percentage of alcohol content in the liquid. It showed the stage of fermentation only. That is correct isn't it? (To counsel.) But on cross-examination of Sheriff Jennings by the defense Sheriff Jennings testified that he had a test made of the liquid for the alcohol content and that it tested 10 per cent of alcohol.

"Now that testimony is an item of evidence for you to take into consideration and weigh the same as you would any other item of evidence, and accept it or reject it according to the degree of credibility you think it is worthy of under the rules of evidence which the court has given you."

Counsel for the defendant at the conclusion of the above statement, added:

"If the court please, at that point, I think the testimony showed that Sheriff Jennings did not have the test made of this stuff but that he himself made the test and that he said that it was 10 per cent alcohol, as I recall the testimony, and that was not at the time he was charged with the offense."

Thereupon the court said to the reporter: "On that particular point, do you think you might be able to find that part of his testimony"; and after a delay, during which the judge replied to a juror concerning a question of law, he received the following reply from the reporter:

"I hadn't the time to finish looking the matter up. Mr. Jennings testified that he made no chemical analysis but that he made a test and it tested 10 per cent."

"The Court: I think there is no evidence as to the time he made that test, if he said that he had. The jury will remember probably better than counsel whether he said that he made the test or had the test made. I will leave that to the jury—what he said in that regard, what he did testify to, whatever it was that showed 10 per cent alcohol content. The time wasn't mentioned as I recall. * * *"

The defendant excepted to the foregoing "as invading the province of the jury."

The testimony concerning the tests with a hydrometer developed during the defendant's cross-examination of Louis Jennings; the portions especially relevant are the following:

"Q. Did you test it with a hydrometer?
"A. We did that evening when we brought it in.
"Q. Do you remember what it tested?
"A. It was still working at the time.
"Q. It didn't test any alcoholic content?
"A. It doesn't test the alcoholic content when tested with a hydrometer. ·
"Q. It shows the alcoholic content doesn't it?
"A. No, it shows the amount of time it has run— when ready to run. * * *
"Q. Your hydrometer did not show it had any alcohol content at the time?
"A. Some, yes, sir.
"Q. What per cent?
"A. I don't know. It doesn't show; the mash tester doesn't show the amount of percentage. It merely shows when it is ready to run."

The testimony concerning the tests for the alcoholic content developed upon the cross-examination of Ralph Jennings; the material part of it follows:

"Q. Did you have a chemical analysis made? .
"A. There was no chemical analysis for alcohol test.

"Q. What percentage of alcohol did it test?
"A. It will test 10 per cent right now.
"Q. Right now?
"A. Yes sir.
"Q. You say that mash now will test 10 per cent?
"A. Yes, sir."

It will be observed that the test made with the hydrometer was applied the day of the arrest. The defendant apparently assumed that another test was made to ascertain the percentage of alcohol, and as a result of his interrogatories developed the information that the mash "will test 10 per cent right now." The nature of this test and when it was made was not disclosed. The above constitutes substantially all of the evidence in regard to these tests; it was not explained or contradicted by any other evidence except the defendant's testimony, already alluded to, wherein he expressed doubts as to the degree of fermentation to which the mash had progressed. A careful comparison between the judge's statement of his recollection of the testimony and the testimony itself indicates that his recollection was substantially accurate. It was challenged at that time in only one particular and that pertained to who had conducted the test for the alcoholic content. As a matter of fact the record does not indicate who made the test and the judge's statement was not inaccurate unless it implied that some third person had done so. However, it would seem that this detail was inconsequential; at least it apparently did not interest the jury. In the general instructions the court had fully and carefully instructed the jury that they were the exclusive judges of all issues of fact; in addition he had given them rules and precepts to guide them in their comparison and analysis of the evidence, which were not only useful, but must have

impressed them with the fact that the duty of determining the facts was exclusively theirs. It will also be noticed that the above incident closed with an instruction to like effect.

The constitution of this state, Art. I, § 16, provides that in all criminal cases the jury shall determine the facts under the direction of the court as to the law, and § 139, O. L., makes provision that the court in charging the jury shall inform them that they are the exclusive judges of all questions of fact. Under these constitutional and statutory provisions we believe that the court might well have declined to state to the jury his recollection of the evidence. Yet we do not believe that the course adopted resulted in error.

In *State v. Lane,* 47 Or. 526 (84 P. 804), the attorney for the defendant, in his argument to the jury, misstated an incident disclosed by the evidence. He was corrected by the trial judge, who related in the presence of the jury the facts. This court, in holding that the exception disclosed no error remarked:

"An examination of Reeder's testimony, which has been hereinbefore set out in its entirety, on this branch of the case, conclusively shows that the court's remark was in effect a correct statement * * *."

In *State v. Watson,* 47 Or. 543 (85 P. 336), this court held:

"The court in its instructions said, among other things, that the testimony tended to show that the defendant leased or rented the room where it is claimed the fire occurred, and that there were found in such room a can of coal oil and other materials. It is claimed that in so doing it invaded the province of the jury. There was no dispute in the testimony as to the facts mentioned by the court. The witnesses for the state and the defendant agree upon that question, and there was therefore, no error in the instruction: *State v. Morey,* 25 Or. 241 (36 P. 573)."

In *Atchison v. The State,* 81 Tenn. 275, the court was confronted with a situation quite similar to that before us; the constitution of the state, however, permitted the court to "state the testimony" to the jury. In holding that the judge of the court below committed no error when he narrated to the jury, in response to its questions, his recollection of the testimony it was held:

"We do not see the force of this objection. The court had the right to state the testimony of the witness to the jury upon their request that he should do so, and the record shows and stated it substantially as the witness had stated, and the court's action in not permitting the defendant's counsel to give them his version of it, after he had argued the case, was eminently proper."

From *People v. Perry,* 65 Cal. 568, we quote:

"It is insisted that the court violated section 19 of article vi of the constitution, which reads: 'Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law.' The court said: 'The testimony there certainly could be no misunderstanding with regard to.' And further: 'I state as testimony in the case, the only testimony in the case touching the time when the watch was taken, is that tending to show it was taken near the door, and that of the defendant that he picked it up in front of the counter,' etc. It is always safer to read testimony from the judge's notes, or from the short-hand reporter's notes if the judge can adopt them as correct; but if testimony has been introduced to prove a certain matter, the court may instruct the jury that testimony has been introduced tending to prove such matter, and such instruction is not an expression of the opinion of the court as to the weight or effect of the evidence, nor as to what fact has been proved: *People v. Vasquev.* 49 Cal. 560. It is not denied by

appellant that there was testimony 'tending to prove' that the watch was taken near the door, nor is it denied that defendant alone testified that 'he picked it up near the counter.' The use of the word 'taken,' in the connection in which it was employed, did not imply an opinion of the judge that there had been a felonious taking. Nor was there fatal error in the statement that there could be no misunderstanding in regard to the testimony, which was merely a declaration that the words and meaning of the witnesses were clear and unambiguous. The credit to be extended to the testimony of each was left with the jurors, and appellant does not suggest that there was any doubt as to the meaning conveyed by the statements of the several witnesses. The judge did not charge the jury with respect to matters of fact within the meaning of the section of the constitution.''

In both of the foregoing cases the constitution permitted the court to ''state the testimony.'' Our constitution does not contain such a provision, nor does it deny the trial court the privilege of making a statement of the testimony when deemed necessary. It, however, prevents comment upon the credibility of witnesses and the weight of the evidence. Hence, we find no occasion to disregard these two authorities. From 16 C. J. Criminal Law, § 2559, p. 1089, we quote: ''So also the court may restate the evidence or some portion thereof: or, where the testimony has been properly reduced to writing, it may read, or may have another read, such portions thereof as the jury desire.''

From *State v. Lane,* supra, we quote: ''* * * when a stenographic report of a trial is made, such modern method does not necessarily preclude a judge, in case the testimony of a witness is evidently misstated by counsel, from correcting the error, if the language used is a repetition of the testimony given.''

To like effect it has been held in other jurisdictions, which have constitutional and statutory provisions not materially different from ours, that it is not error for a court in its charge to a jury to state the substance of what a witness has testified to, if he informs the jury that they are to be guided by their own recollection of the evidence, and that they are the exclusive judges of the truth of the testimony: *Jones v. The State,* 53 Ind. 235; *People v. Carey,* 125 Mich. 535 (84 N. W. 1087); *State v. Freeman,* 100 N. C. 429; *State v. McNeill,* 93 N. C. 553; *Mimms v. The State,* 16 Oh. St. Rep. 221; *Commonwealth v. Sushinskie,* 242 Pa. St. Rep. 406; *Schwantes v. State,* 127 Wis. 160 and *Hannon v. The State,* 70 Wis. 448. These constitutional and statutory provisions do not prohibit the trial judge from stating to the jury the questions which they are to determine and instructing them as to what evidence may be looked to for such determination, nor do such requirements prohibit such reference to the undisputed evidence as is necessary to enable the jury to understand the law applicable to the issues they are to determine: Randall's Instructions to Juries, § 32, and Thompson on Trials (2d ed.), § 2281.

Whether the trial judge should depend upon his recollection or have the reporter read his notes is a matter which rests in his discretion. Likewise, if the *nisi prius* judge believes that a restatement of a part of the testimony would lend undue prominence to it over other testimony he may refuse a juror's request to have it read: *Commonwealth v. Brown,* 264 Pa. 85 (107 Atl. 676). He may likewise decline to state his recollections concerning a part of the testimony when the juror's question calls for the judge's finding upon the incident referred to: *Commonwealth v. Allen,* 152

N. E. 739 (256 Mass. 452). If the court has a portion of the evidence read in answer to the juror's request it is proper to accompany the compliance with a caution to the jury not to impart undue importance to the part read: *Garcia v. State,* 26 Ariz. 597 (229 P. 103), or to direct the reading also of other appropriate parts which the jury might otherwise disregard: *State v. Leavitt,* 44 Ida. 739 (260 P. 164), and *Willard v. State,* 195 Wis. 170 (217 N. W. 651).

■ The alcoholic content of the mash was not the controlling factor in determining the guilt or innocence of the defendant. The controlling factor was developed when the jury determined whether the defendant intended to use this mash for the unlawful manufacture of intoxicating liquors. To establish the defendant's guilt it was not essential that the mash should contain alcohol: *Thomas v. State* (Okla), 244 P. 816. Indicative of an improper intent were the burning lanterns, the degree of fermentation which already had been reached, the corks, bottles, the defendant's admission made at the time of his arrest, and other like facts. In support of an innocent intention we have the evidence offered by the defendant of a plan to use the mash as feed for his turkeys and hogs. Under these circumstances the presence or absence of alcohol was only one fact alongside of others in support of an unlawful or an innocent intention. The court's narrative of its recollection of the two witnesses' testimony was free of all comment as to its credibility. These being the circumstances we do not believe that the very slight error, if any, that existed in the court's recollection prejudiced the defendant. While we do not commend this method of informing the jury upon some

phase of the testimony in answer to its questions we do not believe that this instance resulted in any error.

Since the defendant's assignments of error have been determined in favor of the state, it follows that the judgment of the circuit court will be affirmed.

AFFIRMED.

BROWN and BELT, JJ., absent.

RAND, J., concurs in result.

---

Rehearing denied December 31, 1929

ON PETITION FOR REHEARING
(282 Pac. 567)

For appellant, *Mr. T. J. Enright.*

For respondent, *Mr. George Codding,* District Attorney.

ROSSMAN, J. The petition for rehearing contends that our decision ignored several assignments of error that had been presented to the circuit court and upon which rulings had been obtained. The process by which the alleged rulings were procured, according to the defendant, was a motion for a new trial which set forth the items of evidence and portions of the instructions to the jury, of which complaint is now made. While the record contains such a motion it bears no indication that it was presented to the circuit court. But even though we assume that the circuit court denied the motion we are convinced that such a proceeding did not operate to save for our review the various matters mentioned in it. A party can not sit idly by, see the court receive evidence to which he believes he possesses a valid objection or give an instruction which he feels is erroneous, speculate upon the result, and in the event that it disappoints him

employ a motion for a new trial as a means of bringing up for our review matters to which no objection was made at the time of their occurrence: 3 C. J., Appeal and Error, 743; *Mooney v. Kinder,* 271 Pa. 489; *Gulf C. & S. F. Ry. Co. v. Moser,* (Tex.), 277 S. W. 722. And see *Southern Oregon Co. v. Kight,* 112 Or. 66 (228 P. 132). The limitations to the above rule, stated in the case last mentioned, are not applicable to the present controversy.

The petition states: "The court has cited no authorities bearing out its contention * * * that the evidence supported a finding that the alleged mash was fit for distillation"; the authorities cited in the footnote to § 224, Blakemore on Prohibition, 3d ed., should suffice.

The petition will be denied.

REHEARING DENIED.