Richard **WILLIAMS**, Appellant,

v.

**UNION PACIFIC RAILROAD, a Utah corporation, Appellee.**

No. 16712.

United States Court of Appeals
Ninth Circuit.

Dec. 28, 1960.

J. Kelly Farris, Nels Peterson, Berkeley Lent, Portland, Or., for appellant.

Randall B. Kester, Walter J. Cosgrave, Portland, Or., for appellee.

Before CHAMBERS, HAMLEY, and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

Richard Williams, appellant herein, filed an action in the District Court for the District of Oregon against the Union Pacific Railroad, appellee herein, claiming damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by reason of injuries suffered on August 22, 1958, while he was employed by appellee as a dining car waiter. The case was tried to a jury which rendered a verdict in favor of the railroad. A motion for a new trial made by appellant was denied by the district judge, and appellant filed an appeal to this court. Jurisdiction in the district court and in this court is conceded.

The evidence showed that about 7 A.M. on August 22, 1958, the train on which appellant was working was near La Grande, Oregon, travelling at a speed of 40 miles an hour. When it was "very close", about five or six car lengths, to a crossing, the engineer and the engine foreman at about the same time saw at the crossing in the path of the train a plank 24 feet long, 12 inches wide, and four inches thick, lying diagonally across one of the tracks. Trainmen testified that such a plank constituted a derailment hazard to the train. The operator of the train immediately applied the emergency brakes, and the train came to a stop in about one train length. The appellant was working in the pantry of the dining car when the emergency brakes were applied. He testified that he had a coffee cup in his left hand. He said that there was a sudden violent lurch which threw him forward into a counter, and that then he was thrown backwards. He testified that the accident happened very quickly; that he didn't have time to grab onto anything; and that he didn't know exactly what happened. As a result of this accident, he claimed to have suffered injuries.

Williams relies upon four claimed errors by the district court. As stated in appellant's brief, "The questions presented by this appeal are: (1) Whether the Trial Court erred in ruling on plaintiff's offer of the operating rules of defendant; (2) Whether the Trial Court erred in granting defendant's motion to withdraw a certain allegation of negligence by defendant in failing to maintain handrailings; (3) Whether the Trial Court erred in permitting opinion evidence as to whether the plaintiff could hear a certain whistle; (4) Whether the Trial Court erred in its instruction on the doctrine of unavoidable accident." [1] We will discuss these claimed errors in the order in which they are set out above.

During his testimony at the trial the engineer who was operating the train at the time of the accident was asked whether or not he gave any signal immediately prior to applying the emergency brakes. When he replied that he did not blow any signal and testified that no such signal was required, counsel for appellant offered in evidence the 213-page rule book of the appellee.[2] The

---

1. Claimed Errors 2, 3 and 4 were not claimed as errors in Williams' motion for a new trial.

2. The Consolidated Code of Operating Rules and General Instructions (Edition of 1945).

court declined to admit the rule book as substantive evidence, but stated that he would permit appellant's counsel to cross-examine the railroad's witnesses concerning it. Appellant's counsel then called the engineer's attention to certain printed matter in the rule book which is set out below.[3] The following testimony was elicited:

"Q. Mr. Ladd, are you governed by that certain prescribed signal which appears at Page 18 of the Consolidated Code of Operating Rules and General Instructions which indicates that a sound of one short blast of the whistle indicates 'Apply brakes, stop'? A. That's right * * * That signal is used in yard operations, apply brake, signaling to the yardmen that the brakes are applied and that the train line can be tested. It is used as a warning signal to the other trains in the yard requiring them to stop. It's a yard operation.

\* \* \* \* \* \*

"Q. Just show the jury where it says that that signal of one short blast is a signal for yard engines and to be used within the yard. Show us that, please, Mr. Ladd. A. The rule says, 'One short sound, apply brakes, stop.'

"Q. I understand that, sir. Now, would you show the jury where it says anything else about that? A. That's all it does say.

"Q. Thank you, sir. Did you at any time give a signal of one short blast? A. No, sir."

He further testified that there was no rule with respect to a signal that is to be given before placing a train into emergency.

■ While normally the rules of a railroad are admissible in evidence if they are applicable,[4] we see no prejudicial error in the court's action in this case. He permitted cross examination on the rule, and there was testimony that it was not applicable. Finally, as a complete answer to appellant, the rule which appellant wanted introduced in evidence was *read into evidence*; and the jury heard it when the witness testified, "The rule says 'One short sound, apply brakes, stop.' "

In considering appellant's second specification of error, it should be pointed out that the pre-trial order set out the plaintiff's contentions as to the negligence of the railroad. The subsequent discussion of the contentions makes reference to this order. The pertinent provisions of the pre-trial order are as follows:

"The plaintiff contends that at the time and place the injuries complained of were caused in whole or

---

3. 14. Engine Whistle Signals.

The whistle must be sounded where required by rule or law. In case of whistle failure, speed of train must be reduced and the bell rung continuously when approaching and passing through stations, yards, over public crossings, and around curves.

The signals prescribed are illustrated by "o" for short sounds: "——" for longer sounds. The sound of the whistle should be distinct, with intensity and duration proportionate to the distance signal is to be conveyed.

In sounding signal 14(1) for public crossings, the first of the long sounds must be started at such a point that the signal will be completed by ending the last sound immediately after passing over the crossing, prolonging it if necessary. The duration of the complete signal must be not less than ten seconds. To avoid unnecessary annoyance, the sounds should be no louder than necessary to give adequate warning to traffic in the vicinity of the crossing. Except in case of emergency, the whistle must not be sounded while passing or being passed by a passenger train.

| Sound. | Indication. |
| --- | --- |
| (a) o | Apply brakes. Stop. |

4. Chesapeake & O. Ry. Co. v. Ringstaff, 6 Cir., 1933, 67 F.2d 482; Citrola v. Eastern Air Lines, Inc., 2 Cir., 1959, 264 F.2d 815; 2 Wigmore, Evidence § 282 (3d ed. 1940).

in part by the negligence of the defendant in the following particulars, to-wit:

"(1) Defendant failed to provide and maintain railings for hand holds or other structures or devices for plaintiff to grasp when sudden lurching or stopping of the train occurred.

"(2) Defendant failed to provide and maintain any devices or a system of communication to warn plaintiff to anticipate and prepare for sudden lurching and stopping of the train * * *

At the conclusion of Williams' case counsel for the defendant moved that the court strike out certain of the allegations of negligence:

"Mr. Cosgrave: * * * [T]he defendant moves to withdraw from the consideration of the jury the Plaintiff's Contention No. (1) * * * upon the ground and for the reason that it appears from the plaintiff's own testimony that the absence of handrailings could not have been a proximate contributing cause, for he had no opportunity, according to his own testimony, or time to use handrails. * * *

* * * * * *

"The Court: * * * In connection with your motion, Mr. Cosgrave, I must rule on this. I think your motion to strike the plaintiff's Contention 1 will be allowed because I believe that it is covered by No. (2) that the defendant failed to provide or maintain any devices or system of communication to warn plaintiff to anticipate and prepare for a sudden lurching or stopping of the train. * * * "

It appears that the court allowed the motion of the defendant not on the grounds urged but rather on another ground; i. e., that the matter was covered by another of the contentions. The plaintiff's attorney made no objection to the action of the court.

At the conclusion of all the evidence, defendant's counsel again urged that contention (1) be withdrawn, and the court again stated that it had been withdrawn because it was included in No. (2).[5] Still there was no objection from Williams' attorney.

In his instructions to the jury the district judge explained that the action was based upon the alleged negligence of the railroad, and that in order for Williams to recover, such negligence must be the proximate cause of the injury suffered. The court then said:

"Now in this connection specifically the plaintiff contends that this accident and his injury, as you shall find it to be, was caused in whole or in part by the negligence of the defendant in the following particulars:

"First, that the defendant failed to provide and maintain any devices or a system of communication to warn plaintiff to anticipate and prepare for a sudden lurching and stopping of the train.

"Next, that the defendant negligently made a sudden and violent stop of the equipment on which plaintiff was working without warning plaintiff of any intention to do so.

"Next, that the defendant negligently failed to provide and maintain proper control of its equipment.

"Lastly, that the defendant negligently failed to keep a proper lookout."

It would appear that from the statement made by the court at the time he

---

5. "Mr. Cosgrave: * * * [T]he defendant moves to withdraw from the consideration of the jury Subsection 2 of plaintiff's complaint, upon the ground and for the reason that there is no evidence from which the jury could find that any absence of railings or handholds was—

"The Court: I think that was allowed.
"Mr. Cosgrave: Well, I think your Honor did allow it on the basis that it was included in No. 2.
"The Court: Right."

was discussing the issues with counsel in the absence of the jury, that he felt that the claim of negligence contained in plaintiff's contention No. 1 in the pre-trial order was included in the plaintiff's contention No. 2 therein. And, as above set out, he did give to the jury plaintiff's contention No. 2. Apparently he felt that the charge of failure to provide and maintain any railings or devices for the plaintiff to grasp was included within the second contention of Williams that the defendant failed to provide and maintain any devices to anticipate and prepare for sudden lurching and stopping of the train.

It could be said that counsel for Williams appeared to agree with this interpretation, because he made no objection of any kind to the action of the court in withdrawing contention No. 1 nor did he make any requests for any instructions to be given by the court to the jury. At the completion of the instructions counsel for Williams said, "The plaintiff is entirely satisfied with the set of instructions this jury received."

▉ If the plaintiff's objection is that the court improperly instructed the jury on the handrailing issue, the answer is that the attorney neither submitted any instruction on the point nor made any objection to the instructions of the trial judge. The following provision is contained in the Fed.Rules Civ.Proc. rule 51, 28 U.S.C.A.:

"* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection * * *."

Since no objection was made here the appellant is foreclosed from asserting the matter as error upon this appeal.

▉ However, regardless of the interpretation placed on the appellant's contention by the court and by counsel, there was no error in the court's instructions,

for there was no evidence in the record to support a claim that the absence of handrails in the pantry could have been the proximate cause of any injury to Williams. The record shows that Williams himself testified that the accident happened so quickly that he did not have time to grab onto anything when he was thrown forward into a counter. There was no evidence that even if there were handrails in the pantry they would in any way have prevented the injuries to Williams. The absence of handrails could in no event have been a proximate cause of any of the injuries received by Williams.

Appellant's third specification of error is that the district court erred in permitting a witness to give an opinion concerning whether or not Williams could have heard the train whistle if it had been sounded. Snodgrass, an engineer for the railroad who was in the engine at the time of the accident but who was not then actually operating the engine, was called as a witness by appellant. On cross-examination, after stating that he had been an engineer for 39 years, that during that time he had ridden back in the cars as well as up in the engine, and that he was familiar with the type of cars on the train at the time of the accident, Snodgrass was asked the following question:

"Mr. Snodgrass, assuming that the train at the time involved consisted of four engine units, followed by six baggage cars, followed by seven passenger cars, followed by a diner on this train, and assuming that the plaintiff in this case was in the pantry of the kitchen back there, based on your observations and riding in cars of this type and trains of this length, is it your opinion that the sound of the whistle would be heard by an employee here situated in the dining car?"

Counsel for appellant objected, stating:

"I object to that, Your Honor, on the basis that it assumes facts which are not in this record at this time."

The court ruled:

"Each party may assume their own state of facts. If they are not proven, or there is no evidence behind it, it is for the jury to determine. But Court and counsel may assume any state of facts that they think will be presented. * * * He may answer." A. "I don't believe he could."

In this court the appellant objects to the ruling of the trial judge on the ground that "the question of whether plaintiff could hear this whistle was argumentative and called for a pure conclusion of this witness without establishing said witness as an expert. * * *" This is not the same ground that was argued to the trial judge where counsel stated that the question "assumes facts which are not in this record at this time."

■ A specific objection that is overruled by the trial judge is effective only to the extent of the grounds specified. An objection overruled at trial which named a ground which is untenable cannot be availed of upon appeal because there was another tenable ground which might have been named but was not. Burton v. Driggs, 1874, 20 Wall. 125, 87 U.S. 125, 22 L.Ed. 299; 1 Wigmore, Evidence 339 (3d ed. 1940).

■ However, assuming that the objection which was urged upon this appeal had been made at trial, we still feel that the trial judge was correct in allowing the witness to answer.

Rule 43(a) of the Federal Rules of Civil Procedure provides that "[a]ll evidence shall be admitted which is admissible under the statutes of the United States * * * or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held * * *." The Oregon courts have held that "[w]hether a witness is possessed of special qualification upon the subject-matter of inquiry, which will tend to give value to his opinion, is a matter which rests largely in the discretion of the trial court." State v. Jennings, 1929, 131 Or. 455, 282 P. 560, 563; Douglas County v. Myers, 1954, 201 Or. 59, 268 P.2d 625. This view is supported by McCormick when he says " * * * good sense demands that the trial judge be accorded a wide range of discretion in classifying evidence as 'fact' or 'opinion', as well as in admitting evidence even where found to constitute opinion." McCormick, Evidence 22 (1954). We see no error in the admission of this testimony.

In the fourth specification of error appellant complains of the fact that the court gave an instruction on unavoidable accident.[6]

■ The short answer to this specification is that appellant made no objection to the giving of the instruction as required by the Federal Rules.[7] However, we have examined the instruction. It appears to be in the usual form, and under the facts of this case the district court did not err in giving it to the jury.[8]

The judgment is affirmed.

---

6. "You are further instructed, members of the jury, that the law recognizes what is known as an unavoidable accident. An accident may happen and a person may be injured without negligence on the part of any person. And if you believe * * that the plaintiff's injury * * * was the result of a pure accident or misadventure and was under the circumstances unavoidable, then the defendant would not be held liable therefor."

7. Fed.Rules Civ.Proc. rule 51, 28 U.S.C.A.

8. We have held that all questions of negligence were submitted to the jury in accordance with the wishes of the plaintiff at the time of trial. However, it is interesting to note that in a case involving a somewhat similar occurrence the Supreme Court held that there was not sufficient evidence to warrant presenting the question to the jury. New York, N. H. & H. R. R. Co. v. Henagan, 81 S. Ct. 198.